Gary BURRIS, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9203–DP–187.

Supreme Court of Indiana.

Nov. 4, 1994.

Mark Inman, McShane & Inman, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant was convicted of Felony Murder in January of 1981. At that time, the jury recommended the death penalty and the trial court followed the jury recommendation. This Court affirmed the trial court on direct appeal. *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied*, (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. Subsequently, appellant filed a petition for post-conviction relief in the trial court. That petition was denied; however, on appeal, this Court reversed in part, holding that defense counsel did not adequately represent appellant during the sentencing presentation to the jury. This Court ordered the case remanded for a new sentencing hearing before a jury. Eleven years had expired since the original sentencing jury decision and the trial court assembled a new jury to hear evidence and make a recommendation to the trial court as to the sentencing.

After hearing the evidence and deliberating, the jury informed the trial court that they were hopelessly deadlocked. The trial court then discharged the jury and proceeded to enter judgment ordering the death penalty.

In January of 1980, appellant and his companions, James Thompson and Emmett Merriweather, with appellant being the leader, decided that they would call a cab, then they would rob the driver, and no matter who the driver was they would kill him. North Side Cab Company of Indianapolis dispatched their driver, Kenneth Chambers, in response to the call.

After directing the driver where to go, the three men announced a robbery. They directed the driver to stop near an alley, required him to remove all of his clothing, took him into the alley, made him lie face down on the ground, and tied his hands behind him. Appellant then placed the muzzle of his pistol against the victim's temple and shot him. Several hours later the victim's body was discovered lying in a frozen pool of his own blood.

■ Appellant claims the trial court erred when it impaneled a new jury without any effort to determine if the original jury that had convicted him eleven years previously could be reassembled. Appellant cites *Evans v. State* (1990), Ind., 563 N.E.2d 1251, wherein Evans had claimed reversible error because the trial court did not impanel a new jury to fix the sentence. He contended that it was prejudicial error to let the jury that had heard the guilt phase of his trial to make recommendation on the sentence to be adjudged. This Court held that to do so would be contrary to the statute. Ind.Code § 35–50–2–9. However, *Evans* presented an entirely different situation than the case at bar.

In *Evans*, the sentencing hearing was taking place immediately following the guilt phase of the trial. The wording of the statute makes it evident the intent of the legislature was that the same jury would make the recommendation of penalty to the judge. In the case at bar, the guilt phase of the trial was held. That jury reconvened to recommend penalty and recommended the death penalty. The trial judge followed their recommendation. This Court affirmed appellant's conviction on direct appeal.

The present situation came about by reason of this Court's remanding of appellant's post-conviction relief petition and a directive to the trial court to assemble a jury for a new recommendation concerning the penalty. We see no practical purpose to be served by the trial judge ordering a search for the original jurors eleven years after their first decision in this case. We cannot interpret the statute to mean that no matter how many years have expired since the original trial and jury finding, that a search should be conducted to assemble that original jury.

In the case at bar, both the State and appellant were afforded the full opportunity to acquaint the new jury with the situation at hand. The fact that they were unable to reach a unanimous decision in no way indicates that they did not understand the facts of the situation. It merely means they could not agree among themselves as to what recommendation to make to the trial judge. Disagreement among jurors is a familiar situation to almost every trial judge and indi-

cates nothing more than the oft repeated human experience of disagreement among persons. This Court has faced an analogous situation in a retrial of a defendant who, in addition to his conviction, had been adjudged a habitual offender and had his sentence enhanced accordingly.

In the habitual offender cases as in the capital cases, the guilt phase of the trial is first held, then the jury is reassembled to determine whether the appellant is a habitual offender. This Court held that in such a situation it was entirely proper for the court upon remand to assemble a new jury for the habitual offender determination. *Funk v. State* (1981), Ind., 427 N.E.2d 1081; *State v. McMillan* (1980), 274 Ind. 167, 409 N.E.2d 612, *cert. denied*, 450 U.S. 1003, 101 S.Ct. 1714, 68 L.Ed.2d 207.

Appellant argues that the two situations differ in that in the habitual offender situation, in the second phase the jury is not at all concerned with the guilt or innocence of the defendant in his original trial or the nature of the offense which he had committed, but are concerned solely with his prior offenses and whether those offenses have placed him in the status of being a habitual offender. They point out that in the death penalty situation the jury continues to be concerned with appellant's guilt or innocence and the manner in which the crime was committed and that those facts play a major role in their determination in making their recommendation.

Appellant also points to the word *"shall"* found in the death penalty statute, Ind.Code § 35–50–2–9(d), wherein it is stated, "the jury shall reconvene for the sentencing hearing." We cannot agree with appellant that the word *"shall"* is tantamount to meaning the same jury shall hear the evidence notwithstanding the lapse of time involved. Common sense and judicial economy dictate the trial judge should have the latitude to assemble a new jury in a situation such as the case at bar. We find no error here.

■ Appellant contends the trial court improperly restricted his *voir dire* examination of the prospective jurors. He requested permission to question the prospective jurors concerning what effect the fact that appellant had been on death row for the past eleven years would have on their ability to evaluate the proper penalty and sit as impartial jurors. The trial court denied appellant's request to so *voir dire* the jury and she advised the jury that:

> "This case has been returned to the trial court for sentencing only. In the prior trial, the defendant was found guilty of felony murder. The Indiana Supreme Court returned this case for sentencing only. You are not to speculate on the reasons the Supreme Court set aside the sentence."

The jury was advised of the situation bringing about the necessity for their services. It is difficult to follow appellant's reasoning in this situation. He first argues the original jury should have been reimpaneled to again assess the penalty when it is obvious they would be fully armed with the information which appellant now feels would prejudice the new jury. The prospective jurors in fact were subject to complete *voir dire* examination as to whether they could sit and make an impartial adjudication. When appellant made his request for the additional *voir dire* at the trial level, he stated to the court that he wanted to ask the prospective jurors what they thought the reason the case was sent back might have been if the court was going to advise them of the previous death sentence.

■ Appellant did not mention wanting to ask about the effect his having been on death row might have on the jury. He raises that issue for the first time in this appeal. An issue is waived if a party advances one ground at trial and another on appeal. *Jester v. State* (1990), Ind., 551 N.E.2d 840. However, even had appellant raised this precise question at the trial level, we cannot say that the trial court would have committed reversible error if it had denied the request for such a detailed examination concerning the years appellant had spent on death row. We see no reversible error here.

■ Appellant claims the trial court erred when it admitted State's Exhibits 1, 3, 4, 6, and 7 over his objection. Those exhibits were various photographs of the victim lying

nude in the alley where he had been shot. These photographs were introduced during the testimony of the police officer who was on the scene shortly after appellant's body had been found. The photographs were used by the State for the officer to demonstrate his testimony as to what he found and the conditions prevailing at that time. One picture shows the victim lying face down on the frozen pool of blood and another picture shows his upper torso after the officer had turned him over, demonstrating that in fact he had been frozen to the ground.

Appellant contends these photographs are gruesome and were introduced solely for the purpose of inflaming the jury. He concedes that it is the duty of the trial court to weigh any evidentiary value of the photographs against their potential power to cause undue prejudice. *Dresser v. State* (1983), Ind., 454 N.E.2d 406. This Court has held repeatedly that evidence of this type is relevant and admissible if it depicts matters which a witness would be allowed to describe in testimony. *Games v. State* (1989), Ind., 535 N.E.2d 530, *cert. denied,* 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158.

In the case at bar, the photographs placed in evidence were of the situation as it existed. There was no tampering or mutilation involved. These exhibits are no more gruesome than one would expect to find in the photographing of any murder scene. The trial court did not abuse its discretion in permitting the photographs to come in to explain a police officer's testimony.

■ Appellant claims the trial court erred when it gave over his objection its Final Instruction No. 28. Instruction No. 28 reads as follows:

"THE LAW STATES THAT A DEFENDANT WILL NOT BE ELIGIBLE FOR PAROLE UNTIL HE HAS SERVED AT LEAST ONE HALF OF ANY SENTENCE.

IF YOU DECIDE THAT DEATH IS NOT THE APPROPRIATE PENALTY IN THIS CASE SENTENCING IS UP TO THE COURT. THE COURT MUST THEN SENTENCE GARY BURRIS ON THE MURDER CONVICTION TO A TERM OF YEARS. THE MINIMUM SENTENCE THE COURT COULD IMPOSE IS THIRTY YEARS. THE MAXIMUM SENTENCE THE COURT COULD IMPOSE IS SIXTY YEARS. THERE IS NO WAY TO PREDICT AT THIS POINT WHAT SENTENCE THE COURT MIGHT IMPOSE ON THE MURDER CONVICTION."

Appellant claims the language of the instruction would indicate to the jury that if they failed to recommend death the court would be required to impose a sentence of years. Taken alone, it would be possible for a person to reach such a conclusion from the wording of this instruction, and, of course, such an interpretation would be error. It is clear from the statute that the jury's recommendation in this regard whether it be for the death penalty or against the death penalty is a recommendation only. The trial judge in this case was free to exercise her discretion as to whether to sentence appellant for a term of years or impose the death penalty.

Although the language of the above instruction is not artfully drawn, when one considers it in conjunction with the other instructions given, it is clear the jury was properly informed that their recommendation was not binding on the trial court and that the court would fix the penalty within the parameters of the statute. We would further point out that appellant concedes that he did not present this objection to the trial court and that it would normally be waived, citing *Ingram v. State* (1989), Ind., 547 N.E.2d 823. However, he asserts that the giving of the instruction above quoted is fundamental error. We cannot agree with appellant's observation. Had the jury returned a recommendation for the death penalty, there might be a plausible argument to advance that they had been confused by the instruction; however, in view of the fact that the jury disagreed, thus failing to arrive at a recommendation, the trial court proceeded according to the statute, Ind.Code § 35–50–2–9(f), which reads:

"If a jury is unable to agree on a sentence recommendation after reasonable deliberations, the court shall discharge the

jury and proceed as if the hearing had been to the court alone."

■ Thus, the Court in this case was not overriding a recommendation by the jury but proceeded under the statute to examine the aggravators and mitigators and make a determination as to what sentence should be imposed. The record in this case supports the trial court's decision. The trial court gave due consideration to mitigating factors in that appellant had led a deprived childhood, had been a "gofer" in a house of prostitution when still a child, had been dismayed because he did not know his true parentage or true age, had been raised in a neighborhood with no program for youth, and had blamed himself for the death of the woman who had given him primary care in his early years.

However, the court weighed these mitigators against the aggravators in this case, among which was the fact he had been convicted of robbery in 1974, 1975, and again in 1976. As to the instant crime, the evidence supports the trial court's finding that appellant was the instigator in the crime; that both before and after the commission of the crime he was in possession of the pistol which was used to kill the victim; that before setting out on the commission of the crime it was agreed, under appellant's leadership, that the victim would be killed; that after forcing the victim to remove his clothing he was placed on the ground, his hands tied behind him; and then, it was appellant who placed the muzzle of the gun against the victim's temple and pulled the trigger. We find no error in the trial court's sentence of death.

■ Appellant claims the trial court erred when it overruled his motion in limine and permitted the introduction of "victim impact" evidence. When the motion in limine was first filed, the trial court sustained the motion; however, as the trial progressed, counsel approached the bench and the State informed the trial court as to what testimony it wished to elicit from the victim's mother. The trial court ruled that the State could not introduce evidence that the victim's wife died of cancer after the victim's death and left her children orphaned. The trial court did however rule that the State would be permitted to allow the mother to testify as to the victim's marital status, the fact that he had children, and his military and work record.

Appellant concedes that in *Payne v. Tennessee* (1991), 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720, the United States Supreme Court held that the Eighth Amendment does not prohibit the introduction of victim impact evidence. This Court followed *Payne* in deciding *Roche v. State* (1992), Ind., 596 N.E.2d 896 and *Benirschke v. State* (1991), Ind., 577 N.E.2d 576, *reh'g denied,* 582 N.E.2d 355, *cert. denied,* — U.S. —, 112 S.Ct. 3042, 120 L.Ed.2d 910. In the recent case of *Bivins v. State* (1994), 642 N.E.2d 928, this Court ruled that in order to be admissible, victim impact evidence must be relevant to an issue properly before the jury or court, citing *Woods v. State* (1990), Ind., 557 N.E.2d 1325.

In the case at bar, as in the *Bivins* case, it cannot be said that the evidence permitted by the trial court was directly related to an issue in the case. However, in view of the fact the trial court did not permit the State to present extensive impact evidence but strictly limited that evidence as set out above, we find as we did in *Bivins* that although this type of impact evidence is not permissible, here it does not constitute reversible error because it does no more than state the victim's status in life. The evidence allowed by the trial court could hardly be perceived as generating undue sympathy to the point of reversible error. We find no reversible error in the court allowing the victim's mother to testify to the extent indicated.

■ Appellant claims Ind.Code § 35–50–2–9(b)(1), (g) is unconstitutional as applied to this case. The statute provides, among other things, that the State may seek the death penalty if the defendant committed the murder by intentionally killing the victim while in the commission of a robbery. Appellant contends to apply the statute to the case at bar is to permit the aggravating circumstances, which would give rise to the death penalty, to merely mimic or repeat the elements of the

underlying charge, i.e., a deliberate killing in the commission of a robbery.

Appellant cites several cases in which the death penalty was not sought when a killing occurred in the commission of a robbery. However, in the case at bar, the evidence as above stated supports the trial court's finding of an aggravating circumstance in that at the outset appellant planned to kill his victim and deliberately executed the victim during the robbery. Appellant cites the cases of *Lockett v. Ohio* (1978), 438 U.S. 586, 57 L.Ed.2d 973, 98 S.Ct. 2954 and *Gregg v. Georgia* (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859, for the proposition that the death penalty should not be inflicted in an arbitrary and capricious manner and that there must be a meaningful basis distinguishing it from cases in which the death penalty is not imposed.

In the case at bar, it is not at all difficult to distinguish the facts in this case from the facts in many other robbery cases where the death penalty was not imposed. We see no reversible error here.

■ Appellant claims the application of Ind.Code § 35–50–2–9(b)(1), (g) as applied to this case is unconstitutional because the aggravating circumstance functions as an element of a crime and requires a jury's determination under both the Sixth Amendment and art. 1, § 13 of the Indiana Constitution. Thus, appellant claims he could not be sentenced to death unless the jury made the specific finding of aggravating circumstances.

The question of whether appellant had committed a killing in the perpetration of a robbery in fact was found by the original trial jury. At that stage, it was not necessary that specific intent to kill be proved. *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731, *reh'g denied*, 539 N.E.2d 4. The aggravating circumstance concerning appellant's intent throughout the entire episode was a matter to be determined upon fixing the sentence. The United States Supreme Court has held that a capital sentence procedure will satisfy the narrowing requirement as long as it "narrows the class of death eligible murders and then at the sentencing phase allows for the consideration of mitigating circumstances and the exercise of discretion." *Lowenfield v. Phelps* (1988), 484 U.S.

231, 247, 108 S.Ct. 546, 555, 98 L.Ed.2d 568, 583. The Supreme Court has further held that findings authorizing the imposition of the death penalty need not be made by a jury. *Walton v. Arizona* (1990), 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511.

Appellant attempts to distinguish *Walton* from the case at bar in that in *Walton* the specific findings authorizing the death penalty were not separate elements of the crime, whereas in his case he claims the issue of whether appellant personally and intentionally killed the victim is a determination that must be made by the jury. As we stated previously in this opinion, the original jury in fact did find that appellant was guilty of deliberately killing a person in the perpetration of a robbery. In sentencing, it was the prerogative of the trial judge to make the determination as to the specific circumstances surrounding such a killing in order to determine whether there was aggravation sufficient to sentence appellant to death. We do not agree with appellant's attempt to distinguish *Walton*. We find no error here.

Appellant claims the trial court erred when it overruled his motion to poll the jury as to why it was unable to reach a unanimous recommendation. Appellant argues he was entitled to make this determination to find whether certain members of the jury were "hanging up on the aggravating circumstance, on weighing mitigators against the aggravating circumstance." Under the circumstances, it would appear such a polling of the jury would be totally fruitless. As above pointed out, Ind.Code § 35–50–2–9(f) provides that if the jury is unable to agree on a sentence recommendation, the trial court shall proceed as in the case where there is no jury intervention. It is obvious that in a case of this sort the legislature anticipated that the judge would proceed without a recommendation that the death penalty be imposed.

As previously pointed out in this opinion, the statute makes it clear that the jury's determination is a recommendation only and that the trial judge is free to proceed either to sentence to a period of years or to impose the death penalty notwithstanding any rec-

ommendation made by the jury. In the situation such as the case at bar, had the jury returned a recommendation for the death penalty one could see the possible value of polling the jury; however, where no recommendation is made, and the court proceeds on its own, the polling of the jury would have no utility whatever. There was no error here.

Appellant claims Ind.Code § 35–50–2–9(g)[1] is unconstitutional because it requires the trial court to impose the death penalty if it finds that aggravating circumstances outweigh mitigating circumstances. Appellant focuses on the language:

> "If the hearing is to the court alone, the court shall sentence the defendant to death only if it finds:
>
> 1) that the state has proved beyond a reasonable doubt that at least one (1) of the aggravating circumstances exists; and
>
> 2) that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances."

Appellant reasons that the word "shall" in this section makes it mandatory for the court to impose the death penalty if aggravating circumstances are found. Such an interpretation we find to be strained. It is obvious when reading the statute in its entirety, the context here is that the court is allowed to sentence the defendant to death only if it finds the indicated factors. It is totally unreasonable to interpret the statute as requiring the judge to impose the death penalty.

This Court has repeatedly held that a statute is accorded every reasonable presumption supporting its validity. It will not be held unconstitutional if it is subject to a reasonable construction which renders it constitutional. *Brady v. State* (1991), Ind., 575 N.E.2d 981. If a statute can be construed to support its constitutionality, such construction must be adopted. *Miller v. State* (1987), Ind., 517 N.E.2d 64.

Appellant cites the case of *Woodson v. North Carolina* (1976), 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944, for the proposition that if a statute creates a mandatory death sentence it is unconstitutional. However, in view of the totality of this statute we cannot ascribe to the legislature the intent to provide for a mandatory death sentence. It is obvious the legislature intended the trial court to have discretion under certain prescribed circumstances to impose a death sentence. There was no intent to require the court to give a death sentence under any circumstances. We hold the statute is constitutional.

Appellant contends the trial court erred in denying his belated motion to correct error. He attempted to place jurors on the witness stand to testify as to their deliberations, leading to their inability to reach a recommendation. Appellant correctly noted that Indiana does not permit jurors to impeach their verdict by testimony or affidavit. *Wilson v. State* (1970), 253 Ind. 585, 255 N.E.2d 817; *Stinson v. State* (1974), 262 Ind. 189, 313 N.E.2d 699. However, appellant urges that the inability to reach a recommendation is not a verdict; thus, he should have been permitted to call the jurors. Appellant in fact was permitted to submit by way of an offer to prove the potential testimony of the jurors.

Appellant also cites *Driver v. State* (1992), Ind.App., 594 N.E.2d 488 for the proposition that while jurors cannot impeach their verdicts they can testify as to what happened during deliberation. However, in that case, the testimony was as to the existence of extraneous influence, not as to the content of the deliberations.

In the case at bar, we have no verdict of recommendation by the jury, and under the statute, the trial court proceeded without any recommendation as to choice of penalty. It is difficult to ascertain what appellant may have gained by a complete examination of every juror. Obviously, they did not agree and their disagreement might well have been based upon misunderstanding of the situation. However, as discussed above, this is

---

**1.** Appellant appropriately cites to the former Ind. Code § 35–50–2–9(g). However, the legislature in 1993 amended this statute and added subsection (i). Indiana Code § 35–50–2–9 as amended applies only to murders committed after June 30, 1993.

not an unusual situation faced by trial courts. In the ordinary situation, the discharge of the jury and a possibility of retrial with a new jury is the standard procedure. However, in the situation in the fixing of a death penalty, as above shown, the statute makes a specific provision for the trial judge to proceed with sentencing. We find no error in the trial court refusing to allow extended examination of the jurors.

The trial court is affirmed. The cause is remanded to the trial court for the establishment of a date of execution.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., concurs in result without separate opinion.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Justice, concurring in result.

I concur in the imposition of the sentence of death in this case but write separately to address the relationship of three aspects of this case to prior opinions of this court.

### "Same Jury" Requirement

Our capital sentencing statute provides that "if the defendant was convicted of murder in a jury trial, the jury shall reconvene for the sentencing hearing." Ind.Code § 35–50–2–9(d) (1993). In both *Brewer v. State* (1981), 275 Ind. 338, 417 N.E.2d 889, *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982), *reh'g denied*, 458 U.S. 1132, 103 S.Ct. 18, 73 L.Ed.2d 1403 (1982), and *Schiro v. State* (1983), 451 N.E.2d 1047, *cert. denied*, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983), this court explicitly and unambiguously said that Indiana law requires that when the guilt issue was tried by jury, the sentencing hearing must be before the same jury. *Brewer*, 275 Ind. at 354, 417 N.E.2d at 898; *Schiro* at 1052.[2]

In this case, this court holds that there was no requirement that Gary Burris be sentenced by the same jury following remand or even a requirement that the state make an attempt to reconvene the same jury.

Thus, we graft a judicial exception to the plain language of the statute in holding that the "same jury" requirement does not apply where a case has been remanded for resentencing only and many years have expired since the original trial: "Common sense and judicial economy dictate that the trial judge should have the latitude to assemble a new jury in such a situation."

While it is certainly an unusual assertion of judicial power to suggest that such considerations authorize an exception to the plain language of a statute, I do think that such a reading of the statute is proper here. The statute does not contemplate the special case of re-sentencing following judicial remand. This court must fill in rules for proceeding in death penalty cases in those circumstances where the legislature has not provided explicit guidance.

Furthermore, Burris has not shown prejudice as a result of this process. And, as noted above, a number of Indiana capital defendants have argued to this court that having the same jury was to their detriment because that jury had already made the determination of guilt and that there was a great probability that the jury had already determined to recommend the death penalty without considering the evidence of mitigating circumstances. *Bieghler*, 481 N.E.2d at 95. This is a more plausible argument than contending that the same jury that convicted the appellant (and, in this case, initially recommended death) is more likely to recommend mercy than an entirely new jury.

### Aggravating and Mitigating Circumstances

When this court remanded this case for re-sentencing, *Burris v. State* (1990), Ind., 558 N.E.2d 1067, Chief Justice Shepard detailed substantial available mitigating evidence con-

---

**2.** When appellants in subsequent death penalty cases argued that the statute was unconstitutional in requiring that they be tried by the same jury that convicted them, this court defended the constitutionality of the "same jury" requirement.

*Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 94, *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986); *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 293, *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

cerning Burris's background which was not developed and presented at trial by defense counsel. *Id.* at 1075. In reviewing aggravating and mitigating circumstances after remand, the trial judge found that the aggravating circumstance charged had been proven beyond a reasonable doubt and then reviewed almost all of the matters listed by Chief Justice Shepard. In respect of the potential mitigating effect of defendant's difficult childhood and background, the trial judge noted that "there was no testimony that his background would cause a mental or emotional disturbance at the time of the alleged murder to cause the Defendant to commit the murder." She thus found that the mitigating circumstances which existed were outweighed by the aggravating circumstance. I agree that the trial judge properly considered and weighed the aggravating circumstance and the mitigating circumstances which existed and that sentencing was proper.

### Absence of Jury Recommendation

The trial court here gave no weight or consideration in sentencing to the fact that the jury was unable to reach a unanimous recommendation either for or against imposing the death penalty. The majority in *Roche v. State* (1992), Ind., 596 N.E.2d 896, 899 held that "no meaning should be interpreted from the jury's failure to reach a recommendation" because the language of the statute provides that if the jury is unable to agree, the court must "proceed as if the hearing had been to the court alone," Ind. Code § 35–50–2–9(f) (1993). Nevertheless, the statute does provide that the judge may consider any appropriate circumstances in mitigation. Ind.Code § 35–50–2–9(c)(8). That one or more members of the "conscience of the community" assembled to review the propriety of the death penalty believes that it should not be imposed is, in my view, a circumstance appropriate for consideration, although not grounds for reversal here. *See Roche* at 902 (DeBruler, J., concurring opinion in which Krahulik, J., concurs).