**Gary BURRIS, Petitioner–Appellant,**

v.

**Al C. PARKE, Superintendent, Indiana State Prison, and Pamela Carter, Attorney General of the State of Indiana, Respondents–Appellees.**

No. 95–3725.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 21, 1995.

Decided Nov. 23, 1995.

Reargued En Banc Dec. 19, 1995.

Re-Reargued En Banc June 17, 1996.

Decided Sept. 12, 1996.

Alan M. Freedman (argued), Bruce H. Bornstein, Freedman & Bornstein, Chicago, IL, John Blume, Habeas Assistance Project, Columbia, SC, for petitioner-appellant.

Geoff Davis, Geoffrey Slaughter (argued), Office of Atty. Gen., Indianapolis, IN, for respondent-appellee.

Before POSNER, Chief Judge, and CUMMINGS, CUDAHY, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

POSNER, Chief Judge.

This death-penalty case, twice reargued before the full court, has a tortured history. In 1981 Gary Burris, convicted in an Indiana state court of a murder committed in 1980, was sentenced to death. The judgment was affirmed by the state's highest court, *Burris v. State,* 465 N.E.2d 171 (Ind.1984), and Burris then sought postconviction relief in the Indiana courts. On appeal from the denial of relief by the trial court, the state's supreme court upheld the conviction but vacated the death sentence. *Burris v. State,* 558 N.E.2d 1067 (Ind.1990). A new sentencing hearing was held, and Burris was again sentenced to death. That was in November of 1991. In December of the following year, while Burris's appeal from his second death sentence was pending before the state supreme court, he filed a petition for habeas corpus in federal district court, challenging only his conviction. The district court denied relief. *Burris v. Farley,* 845 F.Supp. 636 (N.D.Ind. 1994). Eight months later the state supreme court affirmed the new death sentence, *Burris v. State,* 642 N.E.2d 961 (Ind.1994), and some months after that a panel of this court

affirmed the district court's denial of habeas corpus. *Burris v. Farley,* 51 F.3d 655 (7th Cir.1995). Burris's execution was scheduled for November 29, 1995.

Two weeks before his scheduled execution, Burris filed another petition for habeas corpus in the district court. In it he alleged a variety of constitutional deficiencies in the second death sentence. The district court dismissed the petition on the ground that it was an abuse of the writ. Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides that a second or subsequent petition for habeas corpus may be dismissed without reaching the merits, even if it raises "new and different grounds," if "the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." See also 28 U.S.C. § 2244(b) (as it existed until April 24 of this year). The panel of this court assigned to Burris's appeal (all appeals in the same capital case go to the panel that heard the first one) affirmed the dismissal of his petition, with one judge dissenting. *Burris v. Parke,* 72 F.3d 47 (7th Cir.1995) (per curiam) (Cudahy, J., dissenting). However, shortly before Burris was due to be executed, the court granted a stay of execution and decided to hear the case en banc. The case was heard on December 19, 1995, but before the decision was rendered the President, on April 24 of this year, signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, which contains provisions curtailing the scope and availability of federal habeas corpus for prisoners generally and condemned prisoners particularly. We ordered that the case be reheard again, to consider the bearing of the new Act on Burris's petition.

■ The Act amends the habeas corpus statute to provide that a second (or third, etc.) petition must be dismissed unless it presents a claim that either "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or that is based on facts that could not have been discovered earlier "through the exercise of due diligence" and if proved would "estab-lish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense." Pub.L. No. 104–132, § 106(b)(2), 110 Stat. at 1220–21 (to be codified at 28 U.S.C. § 2244(b)(2)). Burris does not claim that his second petition satisfies either criterion, but he argues that it is actually a first petition—the first petition attacking his second death sentence as distinct from his conviction, which he attacked separately. If this is right, the new statute permits a state criminal defendant to split his federal collateral attack in two, filing first a petition attacking his conviction (once the state's highest court has upheld it) and then, if the conviction is upheld but the sentence vacated and the case remanded for resentencing, a petition attacking the sentence imposed on remand. We are sure that this is wrong, and not only because guilt and sentencing are successive phases of the same case, rather than different cases. Guilt issues and sentencing issues often overlap, especially in capital cases because of the open-ended character of capital sentencing hearings; so the bifurcated procedure advocated by Burris would increase the burden on the federal courts, contrary to the thrust of the new statute. The procedure he advocates might actually disserve defendants, since the federal court would be deciding the challenge to the defendant's conviction without knowing how severe his sentence would be.

■ We reject the suggestion that the new one-year statute of limitations in capital habeas corpus cases (see section 101 of the new law, 110 Stat. at 1217, adding 28 U.S.C. § 2244(d)(1)) requires the bifurcated procedure. With immaterial qualifications the year runs from "the date on which the judgment became final by the conclusion of direct review," and we take "judgment" to refer to the sentence rather than to the conviction. That is the federal rule, Fed.R.Crim.P. 32(d)(1), and we think "judgment" in the new statute should bear its federal meaning even though the referent includes state as well as federal judgments. The application of the new statute will be made easier by giving the term a uniform meaning. The federal meaning of "judgment" is the standard one and

has the advantage of ruling out a procedure—the bifurcated procedure for which Burris argues—that would disserve the statutory objectives.

■ There is no danger that someone in Burris's position would be prevented from obtaining federal habeas corpus by an unjustified delay in sentencing. If, as in *Phillips v. Vasquez*, 56 F.3d 1030 (9th Cir.1995), the state without fault on the part of the prisoner simply will not issue a final judgment (in that case ten years had elapsed since the prisoner's conviction had been affirmed but his sentence vacated, and he had not yet been resentenced), the prisoner can seek habeas corpus without fear of being unable to challenge the sentence should it ever be imposed. The panel in Burris's first appeal so implied, see 51 F.3d at 658 (cited with approval in *Phillips*, 56 F.3d at 1034 n. 3), and we now make the implication explicit. The state would be estopped in such a case to plead the prohibition against the filing of a second or successive petition that does not comply with the strict requirements of the new statute. And the petitioner could protect himself against the risk that the state courts' delay might be found to be justified by explaining in his first petition for federal habeas corpus why he had decided not to wait until he was resentenced and asking the district court to allow him to withdraw the petition if the court determined that the state was not delaying unduly.

That is not our case. Burris did not attempt to justify the filing of a premature petition on the basis of unjustified delay by the state. When he filed the petition, attacking only the conviction, he had already been resentenced and he had no reason to think that the state supreme court would delay unconscionably in deciding his appeal from the second sentence. Nor did it.

■ So Burris's second petition was indeed a second or successive petition within the meaning of the new (and, we add, the old) law, and as we said it does not satisfy the criteria of the new law for being allowed to file such a petition. But is the new law applicable to proceedings commenced before, or arising out of events occurring before, its enactment? The general answer to this question is found in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (en banc), argued the same day as this case and decided today as well; the answer in the particular circumstances of this case is "no." Because the Antiterrorism and Effective Death Penalty Act does not indicate when the amendment concerning second and subsequent petitions for habeas corpus takes effect—except in states, which Indiana concedes it is not, that have satisfied certain conditions for the processing of capital cases within the state court system, Pub.L. No. 104–132, §§ 107(a), (c), 110 Stat. at 1221, 1226—it takes effect on the date of enactment unless the effect in a case or class of cases would be retroactive in the sense of "attach[ing] new legal consequences to events completed before its enactment." *Landgraf v. USI Film Products*, 511 U.S. 244, ——, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). That is an exact description of what would happen if the new section 2244(b)(2) were applied to Burris's second petition. The completed event to which the new statute attaches new legal consequences is the filing of his first petition, which was limited to issues arising at the guilt phase of the criminal proceeding. We assume that Burris's decision to split in two his attack on the judgment in the state criminal proceedings was not an abuse of the writ. (If it was an abuse, the issue addressed next, the second petition was barred under the old law and there would be no need to consider the applicability of the new one.) If it was not, then the new law, if applied retroactively, would indeed attach a new legal consequence to that completed event, the filing of the first petition: the consequence would be that he could not file a second petition. Had Burris foreseen the new law he would in all likelihood have waited, as most prisoners do, until his second sentence was affirmed and then filed a single petition for habeas corpus consolidating his attacks on both the conviction and the sentence. He made a deliberate choice to file two petitions, having no way of knowing (unless gifted with prevision) that the second petition would be subject to a far more stringent test than the test in the existing law, the test of abuse.

Application of the new law to his case would thus, as in *Reyes–Hernandez v. INS*, 89 F.3d 490 (7th Cir.1996), involving a different procedural provision of the Antiterrorism and Effective Death Penalty Act, have the effect of *mousetrapping* Burris. It would cause him to forfeit a legal remedy on which his life may, literally, depend. The principle is not limited to capital cases, as *Reyes–Hernandez* shows. *Landgraf* was not a capital case; was not even a criminal case. The "mousetrapping" principle that guides our decision on the applicability of the new section 2244(b)(2) to this case would be equally well illustrated by a breach of contract case in which a new law required plaintiffs to plead their claims with particularity, and the defendant moved to dismiss on the ground that the plaintiff, who had filed his complaint years before the new law was enacted, had failed to comply with it. *Landgraf v. USI Film Products, supra*, 511 U.S. at —— n. 29, 114 S.Ct. at 1502 n. 29.

The fact that Burris filed the second petition before the new law went into effect is of no moment. Nor the fact that he filed the first petition before the new law went into effect. The only thing that is important is that, given the character of the first petition—a deliberate "jumping of the gun"—the new law would, if applied to Burris's second petition, attach a new, unforeseeable, and adverse legal consequence to the first petition. The case is unlike *Felker v. Turpin*, —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), where the first petition was filed before the new law but the new law was applied to the second petition. There was no "mousetrapping" there. That, rather than the fact that Felker, unlike Burris, filed his second petition after the law was passed, is why it was proper to apply the new law to Felker's second petition.

■ So the old law applies to Burris, and the question is whether the filing of the second petition was an abuse of the writ of habeas corpus within the meaning of Rule 9(b). The arguments discussed earlier in this opinion against the bifurcated procedure provide materials for answering the question "yes." Against this it can be pointed out that in the particular circumstances of this case Burris did not delay the ultimate disposition of his case, or unduly complicate this court's task of decision, by the procedure that he followed—at least if he is exonerated from any blame for the fact that the propriety of the procedure has stirred up a hornet's nest of difficult issues. Cutting back the other way is the desirability of having clear rules governing the permissibility of successive petitions rather than treating the concept of "abuse of the writ" as a broad, equitable standard to be applied anew in every case. The Supreme Court sought to clarify the concept in *McCleskey v. Zant*, 499 U.S. 467, 489–96, 111 S.Ct. 1454, 1467–71, 113 L.Ed.2d 517 (1991), holding that the petitioner must demonstrate "cause and prejudice" for filing the second petition. The application of this standard to the unusual situation of Burris is not altogether free from doubt. We do not think it necessary to explore these issues, or profitable to do so. The doctrine of abuse of the writ is defunct. The term derives from section 2244(b), now wholly superseded by the new law, which nowhere uses the term. There is no longer any statutory handle for the doctrine, and in any event its role seems wholly preempted by the detailed provisions of the new statute concerning successive petitions. Although the doctrine remains applicable to Burris's case, we shall not have to decide whether he committed an abuse of the writ; for assuming that he did, the state waived the defense when Burris filed his first petition.

Remember that when he did so he had already been sentenced to death the second time and had appealed, but his appeal had not been decided. Thus, he had not exhausted in the state courts of Indiana his claims of constitutional error at the sentencing; those claims were pending in the state supreme court. Burris had filed the petition for habeas corpus, limited to the conviction, pro se. A lawyer was appointed to represent him. The lawyer filed an amended petition that like Burris's pro se petition was limited to the conviction. The lawyer then appeared before the district judge for a hearing on the petition, and stated at the outset that the petition was limited to the issues presented by the guilt phase of the criminal proceeding. No one responded to this statement. The

state, far from suggesting that the petition was premature or that its filing would preclude Burris from challenging his new death sentence in a second petition, told the judge that "all the issues raised here [that is, in Burris's petition] have been exhausted ...; therefore, this court is free to go ahead and address the issues.... [T]here's no question that this court can move forward on this petition and deny it right away." The district judge made no reference to the possible implications of proceeding in the way suggested by the state's lawyer. In all 43 pages of the transcript of the hearing on the petition there is no hint that Burris's mode of proceeding might have precluded his filing a second petition limited to the sentence. These silences are deafening. Of course it is possible that Burris's lawyer, a professor of criminal law, knew the risk and had told Burris of it, though it is surprising that so important a feature of the proceeding should nowhere have surfaced at the hearing. But we are limited to the record, which contains no suggestion that Burris (or for that matter his lawyer) knew that the state might interpose a defense of abuse of the writ to the predictable second petition, challenging the sentence.

We are mindful that abuse of the writ is an affirmative defense and that, technically speaking, the pleading of the defense is premature until a second petition is filed; for it is a defense to the second petition, not to the first. But we must be realistic about the circumstances in which the state declined to mention the possibility of such a defense. For page after page of transcript the district judge and the lawyers discussed the ripeness (exhaustion of state remedies) and merits of the petition. The judge was an active participant, displaying his extensive knowledge of habeas corpus jurisprudence. The state urged him to decide the petition on the merits then and there. Everyone knew that Burris had been resentenced to death and that his appeal was pending. Yet no one saw fit to warn Burris of the possible consequences. No one suggested that maybe the district judge should stay action on the petition until, state remedies exhausted, Burris could add a challenge to his new sentence. Silence can mislead, and when it does it is

treated as speech. We think that in the circumstances the state's silence concerning the implications of an immediate decision on the petition was tantamount to a statement that for the sake of a prompt decision on the merits of Burris's challenge to his conviction the state would forgo the defense of abuse of the writ should he file a subsequent petition limited to the sentence.

At the latest argument of the appeal, the state's lawyer told us that another lawyer in his office had told Burris's lawyer over the phone that the state would raise the defense of abuse of the writ if Burris filed a second petition. There is no reference to this phone conversation in the record of the habeas corpus proceeding. In earlier filings as well the state referred to Burris's having "knowingly" assumed the risk of not being allowed to file a petition challenging his sentence, as having taken a "calculated risk," and so forth, but it has never offered any substantiation for these characterizations. So far as the record shows—and we are not willing to go outside it—no one at the hearing on the first petition for habeas corpus said anything to offset the lulling effect of the state's reference to exhaustion. The objection to the bifurcated procedure was waived.

To summarize, the new law does not apply to Burris's case. The old law applies, but the state forfeited any defense based on that law. Burris is entitled to have his second petition for habeas corpus considered by the district court on the merits. The judgment dismissing the petition is therefore vacated and the case remanded to that court for further proceedings consistent with this opinion.

Vacated And Remanded, With Directions.

MANION, Circuit Judge, with whom KANNE, Circuit Judge, joins, concurring.

An experienced professor of criminal law, appointed by the district court to represent Burris on his habeas corpus petition (we can assume in great part because of his knowledge of habeas law) amended Burris' first petition to limit it to the issues presented by the guilt phase of the criminal proceeding. He explicitly confirmed this limitation at a hearing on the petition as well. Important to

this court's opinion, nobody expressly questioned this approach. The state did not refer to the petition's prematurity at the hearing, the district court "made no reference to the possible implications of proceeding" (ante at p. 470), and the state agreed that Burris' first petition could be addressed.

The court uses this silence to shift the burden to the state to raise the affirmative defense of abuse of the writ to claims that *may* be raised in a subsequent writ petition. A "realistic" view of the hearing's circumstances leads the court to criticize the failure to warn Burris of the consequences of proceeding on a "split" petition. Ante at p. 469. This silence affirmatively "misled" Burris: "silence = speech." Burris and his learned counsel were "lulled" into believing the state would not charge abuse of the writ if he filed a second petition, so the abuse defense was waived.

I join this opinion with the understanding that the holding is confined to the very unusual circumstances of this case. The court's opinion must not be read to require the state to raise all possible affirmative defenses to a *second* habeas petition in its answer to a *first* habeas petition, or at least to indicate that such affirmative defenses will be raised should the prisoner petition again. Otherwise, failure to do so would mean that in a subsequent petition the state had waived each affirmative defense not anticipatorily pleaded and expressly flagged for the prisoner. The state's attorney should not be obliged to teach the petitioner in the answer of any omission and its potential consequences to a second writ petition, or else later forego an abuse of the writ defense. Pursuant to Rule 9(b) governing § 2254 cases, we routinely dismiss second petitions raising issues that should have been addressed, despite the state's failure to warn of a potential ground for the petition. And

Rule 5 governing § 2254 cases says nothing about the need for an answer to contain polite reminders to defense counsel about future abuse of the writ defenses. As the court recognizes, by definition, the pleading of any affirmative defense would be premature until a second petition is filed. Ante at p. 470.

Also this opinion does not propose that the state and the district court must warn the petitioner at a hearing on a first petition that a second habeas petition might abuse the writ. Neither the rules governing these petitions nor the caselaw contain any such mandate. Litigants are assumed to be familiar with the law before they seek relief. It is not the court's job—much less that of opposing counsel—to anticipate traps for litigants and make them aware of potential difficulties. Cf. *Lorenzen v. Employees Retirement Plan of the Sperry and Hutchinson Co., Inc.*, 896 F.2d 228, 237 (7th Cir.1990) (Fairchild, J., concurring) (recognizing counsel held responsible for awareness of rules). Our system presumes the competence of attorneys unless there is a strong indication otherwise. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").[1]

Finally, this opinion is not a serious departure from the current law on waiver. "Federal habeas corpus has its own procedural rules, but the practice in regard to waiver by the respondent (the custodian of the prisoner) is similar to that in ordinary civil cases." *Smith v. Richert*, 35 F.3d 300, 305 (7th Cir. 1994). Waiver is the voluntary intentional relinquishment of a known right. *United States v. Ross*, 77 F.3d 1525, 1541–42 (7th Cir.1996) (quoting *United States v. Olano*,

---

1. Some observers might applaud rather than criticize Burris' first counsel, the criminal law professor who bifurcated the writ. Burris received a full review of his challenge to the conviction. He received a stay of execution pending an en banc hearing on whether his petition challenging the death sentence was an abuse of the writ. While that decision was pending he received an en banc determination of whether the Antiterrorism and Effective Death Penalty Act of 1996 applied to his second petition. With today's decision, he returns to district court for a determination on the merits of his second petition. Depending on the outcome, he has the opportunity to appeal again. Delay is the name of the game in death penalty cases. Had the professor done it right the first time, this process would have been over months ago. Perhaps the professor was more astute than the court gives him credit for.

507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993)). "[W]aiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986). Under any other circumstance, the state's failure to warn a litigant with this caliber of legal representation cannot constitute a "waiver" by the state under these definitions.

Given these caveats, I view the rule of this case as confined to its precise and extraordinary circumstances. While a prisoner appealed from a new death sentence, he petitioned for habeas corpus. He thereby intentionally bifurcated his challenges. First he argued those issues potentially affecting the judgment of conviction; later he claimed he was denied effective assistance of counsel at sentencing. The first petition was considered at a hearing where ripeness was discussed at great length yet the petitioner was not told by counsel or the court of the consequences of split proceedings, and the state prodded the court to proceed. The climate of the hearing—arguably engendered by the state's actions—was one in which the sole issues considered were challenges to Burris' conviction, not his sentence. Yet when he filed his habeas challenge to the death sentence, the state raised, perhaps disingenuously, the charge of abuse of the writ. With this narrow holding, I concur.

But the court's opinion cannot be read to apply beyond these unique facts. A legal fiction such as "silence = speech" cannot prevail in most adversarial proceedings. The court must not shift the burden to the state to assert an affirmative defense to a claim not yet filed and to educate a prisoner and his counsel on the law at a hearing, notwithstanding that the prisoner deliberately "split" his habeas challenges and was represented by a criminal law professor (who, the court must presume, did *not* know the law and did *not* inform his client about the consequences). I view this case not as a new rule of law but as a prudential decision not to invoke abuse of the writ given these unique circumstances. *See* Advisory Committee Note to Rule 9(b) Governing § 2254 Cases ("The bar set up by subdivision (b) is not one of rigid application, but rather is within the discretion of the courts on a case-by-case basis."); *Gunn v. Newsome,* 881 F.2d 949, 957 (11th Cir.) (whether second or subsequent habeas petition constitutes abuse of the writ is left to sound discretion of district court), *cert. denied,* 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 540 (1989).