**William SMITH, Petitioner–Appellant,**

**v.**

**John RICHERT, Judge, Pulaski Circuit Court; Pamela Carter, Attorney General, State of Indiana, Respondents–Appellees.**

No. 93–3711.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1994.

Decided Sept. 13, 1994.

Kelly Leeman, Leeman & Perrone, Logansport, IN (argued), for petitioner-appellant.

Wayne E. Uhl, Deputy Atty. Gen., Indianapolis, IN (argued), for respondents-appellees.

Before POSNER, Chief Judge, and COFFEY and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

It used to be thought that if a person was required by the government to yield up an incriminating document, this was the equivalent of his being forced, in violation of the self-incrimination clause of the Fifth Amendment, to testify against himself. *Boyd v. United States,* 116 U.S. 616, 634–36, 6 S.Ct. 524, 534–35, 29 L.Ed. 746 (1886). It was in this setting that the "required records" doctrine evolved. A person could not complain about being forced to yield up a document that he was required as a member of a regulated industry to keep and to grant the government free access to. *Shapiro v. United States,* 335 U.S. 1, 32–35, 68 S.Ct. 1375, 1391–93, 92 L.Ed. 1787 (1948); *United States v. Lehman,* 887 F.2d 1328, 1333–34 (7th Cir.1989). His choice to enter such an industry was a voluntary one, and once in it

he was required to abide by its rules. The compulsion to testify against himself through the document came, therefore, from a lawful regulatory regime and, critically, from his voluntary decision to submit himself to it, rather than being exerted by government officers in aid of a criminal investigation or prosecution.

But then the Supreme Court decided that the compelled surrender of a self-incriminating document was not compulsion to testify unless the author had been forced to write the document. *Fisher v. United States*, 425 U.S. 391, 407–09, 96 S.Ct. 1569, 1579–80, 48 L.Ed.2d 39 (1976); *United States v. Doe*, 465 U.S. 605, 610–12, 104 S.Ct. 1237, 1240–42, 79 L.Ed.2d 552 (1984). This change of view greatly reduced the significance of the required records doctrine. *Commodity Futures Trading Comm'n v. Collins*, 997 F.2d 1230, 1232–34 (7th Cir.1993). Now the government could compel the production of non-required records, because their creation, and the setting forth of potentially self-incriminating facts entailed by that creation, were the author's voluntary choice; the government had not *made* him give utterance to or record these facts, as it would have done had it forced him to testify or beaten a confession out of him. The only time the government needed the required-records doctrine any more was when the act of production was itself testimonial, that is, when it communicated knowledge possessed by the person making the production and was, therefore—but for the doctrine—protected by the Fifth Amendment from being compelled by the government. If a subpoena demanded all the documents possessed by the subpoenaed person concerning some subject, by producing them the person would be acknowledging that he possessed them and that they concerned the subject in question, and if this acknowledgment was self-incriminating he could not be forced to produce them. *Fisher v. United States, supra*, 425 U.S. at 409–14, 96 S.Ct. at 1580–83; *United States v. Doe, supra*, 465 U.S. at 612–14, 104 S.Ct. at 1242–43; *Doe v. United States*, 487 U.S. 201, 209–10, 108 S.Ct. 2341, 2346–47, 101 L.Ed.2d 184 (1988). But if the documents were required records the person could not resist the subpoena on this ground, for the only acknowl-edgment conveyed by compliance would be of the existence and applicability of the regulatory program that required him to maintain the records. *In re Two Grand Jury Subpoenae*, 793 F.2d 69, 73 (2d Cir.1986).

This thumbnail sketch of the evolution of self-incrimination doctrine relating to documents provides the background necessary for an understanding of the present case. The Indiana Department of Revenue believed that William Smith and his wife had not filed Indiana income tax returns for some years though required by law to do so. The Department served the Smiths with a subpoena duces tecum which commanded them to produce, for the years 1984 through 1988, "Books, accounts, Forms W–2, Forms 1099, Receipts, Invoices, Cancelled checks and any other records necessary to determine the Indiana Adjusted Gross Income Tax Liability of William E. and Beverly K. Smith, as required by" an Indiana statute which provides that any person subject to an Indiana tax "must keep books and records so that the [Department of Revenue] can determine the amount, if any, of the person's liability for that tax by reviewing those books and records." Ind.Code § 6–8.1–5–4(a). Smith refused on Fifth Amendment and other grounds to comply with the subpoena and was prosecuted for and convicted of failing to permit the examination of records that the Indiana statute required him to keep, a misdemeanor. His principal defense was that by complying with the subpoena and thus allowing such examination he would have been testifying against himself. His conviction was affirmed over Fifth Amendment objection in *Smith v. State*, 588 N.E.2d 1303 (Ind.App.1992). The court ruled that the records sought by the subpoena were required records and so could lawfully be compelled to be produced. Smith then applied for federal habeas corpus. (He has remained free on bail throughout the entire course of his criminal and postconviction proceedings, which is why the state court judge and the state attorney general are the respondents named in his application for habeas corpus, rather than a conventional custodian, such as a prison warden. See 28 U.S.C. § 2254, Rule 2(b).) The district court dismissed Smith's

application in a brief order which gives no reason for rejecting the Fifth Amendment claim except what may be inferred from the court's approving reference to the opinion of the Indiana court of appeals in *Smith v. State.*

 A statute that merely requires a taxpayer to maintain records necessary to determine his liability for personal income tax is not within the scope of the required-records doctrine. We so held in *United States v. Porter,* 711 F.2d 1397, 1404–05 (7th Cir.1983), which involved a Treasury Regulation materially identical to the Indiana statute, Treas.Reg. § 1.6001–1(a), and the state has given us no reason to reexamine that decision. Despite the fears expressed by Justice Jackson, dissenting in *Shapiro,* see 335 U.S. at 71, 68 S.Ct. at 1410, a statute that required all Americans to keep a diary in which they recorded every arguably illegal act that they committed, or make a tape-recorded confession whenever they committed an illegal act, would not empower the authorities, under the aegis of the required-records doctrine, to compel the production of the diary or the tape. *Baltimore Dept. of Social Services v. Bouknight,* 493 U.S. 549, 556–58, 110 S.Ct. 900, 905–07, 107 L.Ed.2d 992 (1990). A statute that requires taxpayers to maintain records relating to an activity in which the government has a legitimate interest—whether our Orwellian hypothetical statute or a statute, federal or state, that requires taxpayers to maintain records required to document their tax liability—does not violate the self-incrimination clause of the Fifth Amendment (our hypothetical statute might of course violate other provisions of the Constitution). But this does not dispose of the question whether the compelled production of those records without a suitable grant of immunity would comport with the clause. The hypothetical case in which every individual is required to maintain a record of everything he does that interests the government is remote from the case of the individual who enters upon a regulated activity knowing that the maintenance of extensive records available for inspection by the regulatory agency is one of the conditions of engaging in the activity. The decision to become a taxpayer cannot be thought voluntary in the same sense. Almost anyone who works is a taxpayer, along with many who do not.

It is true that *California v. Byers,* 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971), held that a law requiring drivers involved in automobile accidents to give their name and address to the owner of the other car involved in the accident did not violate the self-incrimination clause of the Fifth Amendment. There was no majority opinion, so the rationale for the decision is unclear. But the plurality opinion, at least, did not regard the information—although it might place the informant at the scene of a crime that he had committed—as testimonial in character, and both it and Justice Harlan's concurrence emphasized that the fraction of cases in which the information would be self-incriminating was tiny and the public interest in the self-reporting of accidents immense. Neither opinion relies on the required-records doctrine.

In an effort to get out from under *Porter* the state points out that Smith is a farmer and cites Indiana statutes that the state contends require farmers to keep certain records. Ind.Code §§ 26–3–7–19(a), 26–3–7–28, 26–3–7–33. Now to begin with there is no *evidence* that Smith is a farmer, other than what little can be inferred from the testimony of the revenue agents that when they approached him about the documents they wanted he was "standing in a field." Not every field is on a farm, and not every person standing in a farmer's field is a farmer. But suppose Smith *is* a farmer. It is true that like most businesses nowadays farming is regulated to a considerable extent; but it is far from the usual conception of a regulated industry, such as electrical generation, local telephone service, or railroad transportation. We need not run this hare to the ground, however, since the statutes that the state has cited to us are addressed to persons who warehouse farm commodities, rather than to farmers, and since in any event the relation between Smith's occupation as a farmer and the subpoena is adventitious. Nothing in the subpoena identifies the records sought as records required by the state's agricultural statutes to be kept. On the contrary, the subpoena specifies the source of the require-

**304**

ment as the Indiana tax statute, which applies to every Indiana taxpayer, and Smith was neither charged with nor convicted of failure to keep or produce records required by any other statute. The state itself concedes that at least some of the documents sought by the subpoena, such as cancelled checks and subpoenas, were not required to be retained by any statute other than the general tax statute. Cf. *United States v. Lehman,* 887 F.2d 1328, 1335–36 (7th Cir. 1989).

■ A conclusion that the documents sought by the subpoena were not required records does not conclude the case. Smith could resist the production of nonrequired records only if the act of production would incriminate him, as by authenticating incriminating documents. Authentication is not the issue with the W–2's and 1099's, for (like the accountant workpapers in *Fisher v. United States, supra* ) they are forms prepared by third parties and mailed to the taxpayer, rather than prepared by himself. Even so, by producing them Smith would have acknowledged having received them, foreclosing any defense of nonwillfulness based on an argument that he had omitted the income shown on the form from his income tax return only because he had no record of receiving the income and had forgotten about it. Production in these circumstances would be testimonial and incriminating. Cf. *Fisher v. United States, supra,* 425 U.S. at 410, 414, 96 S.Ct. at 1580, 1582; *United States v. Doe, supra,* 465 U.S. at 613–14, 104 S.Ct. at 1242–43. And we point out that if the state did not want to use the act of production to incriminate Mr. Smith, it could have agreed not to disclose at any trial arising out of a prosecution of Smith for willful nonpayment of Indiana taxes that it had obtained the documents establishing Smith's tax liability from Smith himself, with all that that would have implied.

■ We are mindful that *In re Grand Jury Subpoena,* 21 F.3d 226 (8th Cir.1994), holds that W2's (and presumably 1099's as well) are not shielded from production; but it was a different kind of case. The individual whose tax forms were subpoenaed was operating an automobile dealership as a sole pro-

prietorship, and all the documents sought were deemed to be required records of the dealership. This should not have concluded the issue whether all the documents had to be produced, but the court held, without discussing particular documents, that since they were required records "the individual admits little of significance by the act of production because of the public aspects of the documents." Id. at 230 (footnote omitted). So it was a case about the testimonial significance of being forced to produce *required* records, and the court thought such compulsion had less testimonial significance than in the case of nonrequired records. The case cannot be interpreted to hold that, when W–2's or 1099's are not required records, their production is so devoid of testimonial significance that the privilege against compulsory self-incrimination does not attach. Nor is ours a case like *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), where because the records were corporate rather than individual, the custodian could not resist their production on the ground of self-incrimination, since a corporation has no rights under the Fifth Amendment. Furthermore, the subpoena in our case was not limited to documents in the nature of W–2's or 1099's. We add, as a final comment on the Eighth Circuit's decision, that it is unclear whether the law actually requires the taxpayer to retain W–2's or 1099's. See *Standard Federal Tax Reports* ¶¶ 36,411.015, .035 (CCH 1993); IRS Pub. No. 552 ("Recordkeeping for Individuals)," revised Nov. 1993. They were assumed rather than found to be required records in the Eighth Circuit's case; if the assumption is false, so is the court's conclusion; but there is no need to resolve the issue here. It is enough to point out that in a case in which the production of personal (not business) tax records of the character of W–2's and 1099's would have testimonial force and incriminate the taxpayer, the principles of *Fisher* and *Doe* establish that the required-records doctrine is inapplicable and that production is excused by the self-incrimination clause.

■ All this said, it is unlikely that the production of each and every one of the documents that Indiana sought from Smith

would have incriminated him. On this basis, at argument the state's lawyer argued that it was Smith's burden when he received the subpoena to seek to quash or limit it by submitting to a court (presumably the state court in which Smith was charged and eventually convicted), in camera, all the documents within the scope of the subpoena and asking the court to determine which were privileged, as in *United States v. Doe, supra*, 465 U.S. at 607, 104 S.Ct. at 1239. But this argument, while adumbrated in the state's brief as well as in argument, is so scantily presented in the brief—it consists of one sentence, with no reference to authority—that it cannot be considered preserved for our consideration. *DDI Seamless Cylinder Int'l, Inc. v. General Fire Extinguisher Corp.*, 14 F.3d 1163, 1168 (7th Cir.1994). Since, however, the state, although permitted to defend the district court's decision on grounds not considered by that court, *Massachusetts Mutual Life Ins. Co. v. Ludwig*, 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976) (per curiam); *Singletary v. Continental Illinois National Bank & Trust Co.*, 9 F.3d 1236, 1240 (7th Cir.1993), was not required to do so, *Jackson v. Norris*, 748 F.Supp. 570, 571 (M.D.Tenn.1990); cf. *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989), we do not think this ground can be considered waived forever.

█ The question whether the state waived it by failing to present it to the district court is separate from whether it waived it by failing to urge it on us as an alternative ground for affirmance, and is an issue to be considered by the district court in the first instance. In ordinary civil cases a defendant can move to dismiss or for summary judgment on fewer than all possible grounds without waiving the others, *Bertha Building Corp. v. National Theatres Corp.*, 269 F.2d 785, 787–88 (2d Cir.1959); 6 *Moore's Federal Practice* ¶ 56.27[3], at p. 56–865 and n. 13 (2d ed. 1993)—the rules expressly permit motions for partial summary judgment, Fed.R.Civ.P. 56(a), (b)—but if the case goes to trial he cannot hold some of his grounds in reserve for use should he lose on the grounds he does present. *Havoco of America, Ltd. v. Sumitomo Corp. of America*, 971 F.2d 1332, 1336 (7th Cir.1992). Fed-

eral habeas corpus has its own procedural rules, but the practice in regard to waiver by the respondent (the custodian of the prisoner) is similar to that in ordinary civil cases. When the respondent moves to dismiss in advance of any evidentiary hearing, he is not required to marshal all his grounds. *Walters v. Scott*, 21 F.3d 683, 689 (5th Cir.1994). But if an evidentiary hearing, which is the parallel in habeas corpus to a trial in a regular civil case, is conducted, the respondent must put in all his defenses, on pain of forfeiture if he does not. *Boykins v. Wainwright*, 737 F.2d 1539, 1541, 1545–46 (11th Cir.1984).

So it would be premature for us to decide that Smith is entitled to relief. But because the ground on which the state court relied, and, it appears, the district court as well—that all the documents sought by the subpoena were required records—is untenable and no alternative ground is adequately presented, the judgment of the district court must be reversed and the case remanded. We add that the state's new argument, while worthy of further consideration, is not airtight. Had it wanted to challenge Smith's refusal to comply with the subpoena by obtaining a judicial determination of the subpoena's propriety, the state could have petitioned the state trial court for an order enforcing the subpoena. Ind.Code § 6–8.1–3–12(c). One could argue that since the state did not do that, it was open to Smith to raise his Fifth Amendment defense for the first time at his trial; it was not his burden to move in advance of trial to quash the subpoena. Again that is a matter for resolution by the district judge in the first instance. If he resolves it in Smith's favor (or finds the state's argument waived), he should invalidate Smith's conviction.

REVERSED AND REMANDED.