# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 2, 2012

No. 11-30553

Lyle W. Cayce
Clerk

In the Matter of:
MBS MANAGEMENT SERVICES, INCORPORATED,

Debtor,

_____

CLAUDE LIGHTFOOT, Trustee for the
MBS Unsecured Creditors' Trust,

Appellant Cross-Appellee

v.

MXENERGY ELECTRIC, INCORPORATED,

Appellee Cross-Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.
EDITH H. JONES, Chief Judge:

The bankruptcy Trustee of MBS Management Services, Inc. ("MBS"), a management company for dozens of apartment complexes, appeals judgments rejecting his claim that payments made by the debtor to MXEnergy Electric, Inc. ("MX") to reimburse MX for supplying electricity to the complexes were avoidable preferences. We agree with the bankruptcy and district courts that

No. 11-30553

the payments were made on a "forward contract" expressly exempt from the Bankruptcy Code's preference provision under 11 U.S.C. § 546(e). AFFIRMED.

## I.  Background

MBS provided management services for apartment complexes in Texas and Louisiana.  In a December 12, 2005 agreement ("the Agreement"), MBS agreed to purchase the "full electric requirements" for specified properties (each run by affiliated LLCs) from Vantage Power Services, LP ("Vantage") for twenty-four months for $0.119 per kilowatt-hour, based on actual metered usage.  In 2007, Vantage sold its electrical service agreements in Texas to MX.  In late August 2007, MBS paid $156,345.93 to MX to cover its affiliates' past-due electric bills.

MBS filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 5, 2007.  Claude Lightfoot, the Trustee, initiated this adversary proceeding in the bankruptcy court to recover the $156,345.93 as an avoidable preferential transfer under 11 U.S.C. § 547(b).  The parties stipulated to all the requirements of a preference action:  the payments were made within ninety days of the bankruptcy filing, while MBS was insolvent, and entitled MX to receive more than it would have received in a Chapter 7 liquidation.  *Id.* However, MX argued that avoidance is impermissible under 11 U.S.C. § 546(e), which shields from avoidance payments made pursuant to a preexisting forward contract.  After a bench trial, the bankruptcy court held that the Agreement was a forward contract and the payments were settlement payments governed by Section 546(e). The district court affirmed, and the Trustee appeals to this court.

## II.  Standard of Review

"A bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed *de novo*." *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009) (citations omitted).  This court will only reverse factfindings for clear error if we are left with the definite and firm conviction, in light of the

2

No. 11-30553

entire record, that a mistake has been made. *Id.* We review a trial court's decision to admit expert testimony for abuse of discretion; the court "abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citation and internal quotation marks omitted).

### III.  Discussion

### A.

The Trustee's central challenge is to the lower courts' determination that because MX and MBS were parties to a forward contract under Section 546(e), MBS's payments to MX were exempt from avoidance under Section 547(b). Because the parties stipulated to the prerequisites of Section 547(b), the payments must fall within an exception, or they will be avoidable by the trustee as preferential transfers.

In practice, the Agreement was a two-year futures contract for the sale of electricity by a broker, MX, at a fixed price.[1] Its terms track the Bankruptcy Code's definition of a "forward contract" as "a contract (other than a commodity contract[]) for the purchase, sale, or transfer of a commodity . . . with a maturity date more than two days after the contract is entered into . . . ." 11 U.S.C. § 101(25)(A). The Code exempts from the operation of various bankruptcy avoidance statutes "a transfer that is a . . . settlement payment . . . made by or to [a] . . . forward contract merchant . . . ." 11 U.S.C. § 546(e).

---

[1] The Trustee contends that the Agreement was no contract at all between MBS and MX; it was never signed by Vantage, he argues, and no evidence was presented of assignment of the Agreement from Vantage to MX. The Trustee did not renew this contention, rejected by the bankruptcy court, on appeal to the district court. Similarly, the Trustee did not raise his "settlement payment" argument as an issue at the district court. Issues not raised by a party seeking review in the district court are deemed waived by this court. *In re Bradley*, 501 F.3d 421, 433 (5th Cir. 2007). The Trustee has therefore waived these arguments.

No. 11-30553

The Trustee disputes that the Agreement was a "forward contract" because it contained neither a specific quantity of electricity to be purchased nor specific delivery dates.[2]  Mere evidence of recurring payments for a commodity, he contends, is insufficient to fall within the definition of a forward contract.  The Trustee's argument, if correct, would exclude many natural gas, fuel and electricity requirements contracts from the Section 546(e) shield against preference recovery.

Recovery of preferential payments made by a debtor in the run-up to filing bankruptcy is a key tool for accomplishing an equitable distribution of the debtor's limited assets.  To state the policy behind preference-recovery law, however, is only the beginning of the statutory inquiry.  Congress has grafted numerous qualifications on the bare definition of an avoidable preferential transfer.  *See*, *e.g.*, 11 U.S.C. § 547(c)(1)-(9).  Section 546(e) is one among many.  The courts' task is not to fulfill a vague policy of furthering the recovery of last-minute transfers by debtors to certain creditors, but to apply the statutory provisions as Congress wrote them.  The Supreme Court has repeatedly emphasized that the task of statutory interpretation "ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 122 S. Ct. 941, 950 (2002) (internal quotation marks and citations omitted).

This court has previously engaged in close statutory analysis of forward contracts.  *In re Olympic Natural Gas*, 294 F.3d 737, 740-41 (5th Cir. 2002)

---

[2] The Trustee also notes in his opening brief that neither MBS Management nor the apartment complex LLCs were "merchants" and asserts that this renders Section 546(e) inapplicable.  In his reply brief, he offers for the first time the argument that the legislative purpose and history of Section 546(e) imply that *both* parties to a forward contract must be commodities merchants in order for payments made under the contract to fall within the section.  Even if this argument was properly briefed, a dubious proposition, Section 546(e) protects payments "made by or to . . ." a forward contract merchant (emphasis added).  MX is such a merchant.  *See* 11 U.S.C. § 101(26).

No. 11-30553

(concluding that the Bankruptcy Code divides the commodities market into only two categories: (1) on-exchange futures transactions [commodities contracts] and (2) off-exchange forward contracts).  As in *Olympic*, we rely on the statutory language alone, and the Trustee's proffered requirements of specific quantity and delivery date must fail.  Neither the definition of a forward contract, 11 U.S.C. § 101(25), nor the exemption from preference recovery, Section 546(e), contain such limitations.[3]

The Trustee contends, however, that *Olympic*, *supra*, and a Fourth Circuit case both specify that exact quantities and delivery dates are required for forward contracts.  *Olympic* says no such thing; exact price and delivery date were simply embodied in the contracts at issue in the case.  Instead, *Olympic* rejected several arguments designed to narrow the scope of Section 101(25) contrary to the statutory text.  *See* 294 F.3d at 741-42.  Likewise, the Fourth Circuit case, *In re National Gas Distributors, LLC*, 556 F.3d 247 (4th Cir. 2009), deflected attempts to restrict the definitions of "forward agreements" and "swap agreements" in 11 U.S.C. §§ 101(53B) and 546(g), respectively.  To the extent *National Gas* construes these other statutory provisions, it is inapplicable here.  The *National Gas* court in fact observes that, "the Bankruptcy Code uses both 'forward *contract*' and 'forward *agreement*' but defines only 'forward *contract*,' and not 'forward *agreement*,' apparently making a distinction between the terms."  556 F.3d at 255 (emphasis in original).  Further, while *National Gas* lists "fixed" "quantity and time elements" as characteristics of forward *agreements*, and in so doing references forward *contracts* cases, the context of the court's discussion is intentionally open-ended, *see id.* at 259-60, and evocative

---

[3] In any event, a "requirements" contract is sufficiently definite to be enforceable under the U.C.C. § 2-306 precisely because knowledgeable merchants can estimate the quantity of product necessary to supply the buyer's "requirements."  This is equally true for a commodity like electricity that is affected by seasonal variations in use.

rather than prescriptive. The court's discussion has little bearing on the issues before us, especially in light of the Code's definition of a "forward contract."

Related to its fixed delivery date argument, the Trustee criticizes the absence of a "maturity date" from the Agreement. In one respect, this is nonsense, because *no* delivery of electricity was scheduled to occur less than two days after the Agreement's execution. *See* 11 U.S.C. § 101(25)(A) (A "forward contract" must have a "maturity date more than two days after the date the contract is entered into."). In another sense, although courts may have been uncertain about the meaning of "maturity date" as used in this provision, none suggest that contracts that do not *specify* a maturity date do not *have* one. *See, e.g.*, *In re Renew Energy LLC*, 463 B.R. 475, 480 (Bankr. W.D. Wis. 2011) ("To date, no court has explicitly defined the term 'maturity date.'"); *In re Mirant Corp.*, 310 B.R. 548, 565 (Bankr. N.D. Tex. 2004).

The Trustee's arguments reflect concerns expressed in various cases that payments debtors make on "ordinary supply contracts" should not be protected from preference litigation. Leaving aside that these concerns are immaterial when laid against the statutory text,[4] the expert testimony in the bankruptcy court explained the uses of forward contracts. As the bankruptcy court summarized the testimony,

> . . . [F]orward contracts are negotiated between industry participants and forward contract merchants. The industry participants are either producers or users of the commodity who sell or purchase the commodity in advance to hedge against price fluctuations. Forward contract merchants create or manage commodity markets by providing a place for industry participants to buy or sell a commodity in advance of its actual production.

---

[4] In *Olympic*, this court found "no reason to . . . distinguish between 'financial' forward contracts, and 'ordinary purchase and sale' forward contracts, when the statutory language makes no such distinction." 294 F.3d at 742.

> . . . [T]he forward contract merchant must deliver on the contracts to which it commits by supplying the commodity or taking delivery. While forward contracts provide an imperfect hedge against fluctuations in supply, the risks . . . can be managed . . . . As a result, forward contracts for electricity do not typically limit the quantity sold or purchased. Instead, they are generally for the entire needs or demands of the purchaser.

*In re MBS Mgmt. Svcs., Inc.*, 432 B.R. 570, 575-76 (Bankr. E.D. La. 2010). Whether one agrees or disagrees with Congress's decision to exempt "forward contracts" from preference recovery, this explanation places the type of futures contract arranged between the debtor and MX well within the class covered by §§ 101(25) and 546(e). *See also In re National Gas*, 556 F.3d at 258 (supply contracts between industry participants are not per se excluded as forward contracts). The bankruptcy court also pointed out that because forward contracts are individually negotiated and not exchange-traded, the Bankruptcy Code reasonably forewent encumbering the definition with technical requirements.

For these reasons, the lower courts properly found the parties' Agreement exempt from preference recovery under Section 546(e).[5]

## B.

The Trustee also argues that the bankruptcy court erred in accepting expert testimony from Jeffrey A. Mayer, the President and CEO of MX. The bankruptcy court accepted Mayer as an expert in commodity trading of electricity including the formation, regulation, and trading of contracts for purchase and sale between producers, users, marketers, middlemen, and brokers

---

[5] We note but do not resolve issues surrounding the question whether any residential consumer, who has a contract with his local utility company to lock in a favorable rate, and who then files for bankruptcy, has entered into a contract shielded by Section 546(e) from Section 547. However, under 11 U.S.C. § 366, utilities already have special protections in bankruptcy, the result of which may not be dissimilar to Section 546(e).

No. 11-30553

including the standards and requirements of those contracts, whether they be forward or future contracts traded on- or off-exchange.[6]

Under Federal Rules of Evidence 702 and 703, the trial judge serves as a gatekeeper to ensure the reliability and relevance of expert testimony. The Supreme Court has provided factors to inform the reliability determination, but the inquiry is a "flexible" one, and trial courts have "broad latitude when [deciding] *how* to determine reliability and in the reliability determination itself. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42, 119 S. Ct. 1167, 1171 (1999). This court has previously noted that "[m]ost of the safeguards provided for in [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993),] are not as essential in a case such as this where a judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). Whether *Daubert*'s suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony.[7]

Mayer's testimony established that he had extensive experience in the field of commodity trading and played a key role in drafting frequently used form contracts before becoming the head of MX. His function as an expert was to help the court understand the typical structure of forward contracts within his industry. Mayer was well-versed in the field his testimony described. That he was an interested expert witness, testifying on behalf of MX while also serving as its CEO, goes to the weight, not the admissibility, of his testimony. *Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993). Further,

---

[6] Contrary to the Trustee's suggestion, Mayer was not designated as an expert with respect to legal interpretation of the Bankruptcy Code.

[7] The suggested indicia of reliability in *Daubert* center around the type of scientific evidence at issue in that case, and its specifically suggested factors neither necessarily nor exclusively apply to all experts or in every case. *Carmichael*, 526 U.S. at 141, 119 S. Ct. 1167, 1171.

Mayer's testimony describing the market and contracts with which he was familiar did not rest on scientific principles or theories and therefore did not require scientific substantiation. *See Pipotone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (The requisite "analysis is a flexible one, and . . . the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." (quoting *Carmichael*, 526 U.S. at 150, 119 S. Ct. 1167, 1175 (internal quotation marks omitted))). We do not find an abuse of discretion in the bankruptcy court's acceptance of Mayer's expert testimony regarding his field.

The Trustee's objections that Mayer testified regarding the legal conclusion that the contract in this case was a forward contract are moot in light of our *de novo* legal determination that the contract here was a forward contract.

## IV.  Conclusion

Because the Agreement was a forward contract within the meaning of 11 U.S.C. § 546(e), and Mayer's expert testimony was admissible, the bankruptcy and district courts correctly rejected the Trustee's avoidance action. It is unnecessary to reach MX's cross-points in support of the judgment. We therefore **AFFIRM**.