# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-3799

IN RE:

SPECIAL FEBRUARY 2011-1 GRAND JURY
SUBPOENA DATED SEPTEMBER 12, 2011

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:11-gj-00792-1—**James F. Holderman,** *Chief Judge.*

ARGUED APRIL 17, 2012—DECIDED AUGUST 27, 2012

Before BAUER, KANNE and SYKES, *Circuit Judge*s.

BAUER, *Circuit Judge.* In this appeal, we are asked to decide whether compulsory production of foreign bank account records required to be maintained under the Bank Secrecy Act would violate appellee T.W.'s Fifth Amendment privilege against self-incrimination. Because we find that the Required Records Doctrine applicable to this case, we hold that T.W. must produce the subpoenaed records.

## I.  BACKGROUND

Appellee T.W. (T.W. stands for target witness) learned in October 2009 that the IRS had opened a "file" on him, and that two investigators—an IRS special agent and DOJ tax division prosecutor—were assigned to investigate whether he used secrete offshore bank accounts to evade his federal income taxes. About two years into the investigation, a grand jury issued T.W. a subpoena requiring that he produce, for the time period of October, 2006 until present,

> Any and all records required to be maintained pursu-ant to 31 C.F.R. § 103.32 [subsequently relocated to 31 C.F.R. § 1010.420] relating to foreign financial accounts that you had/have a financial interest in, or signature authority over, including records re-flecting the name in which each such account is main-tained, the number or other designation of such ac-count, the name and address of the foreign bank or other person with whom such account is main-tained, the type of such account, and the maximum value of each such account during each specified year.

(brackets in original).

The records that the Government demands T.W. to produce are records that he is required to keep under the Bank Secrecy Act of 1970. T.W. filed a motion to quash the subpoena on the grounds that producing the de-manded records would violate his Fifth Amendment privilege against self-incrimination; complying with the subpoena may, for instance, reveal that T.W. has not reported bank accounts that should have been reported

or that he has reported inaccurate information. On the other hand, if T.W. denies having the requested records, he still risks incriminating himself because failure to keep those records is a felony under the Act.

The Government argued that the Required Records Doctrine overrides T.W.'s Fifth Amendment privilege. Under that doctrine, records required to be kept pursuant to a valid regulatory program fall outside the scope of the Fifth Amendment privilege if certain conditions are met. The district court quashed the Grand Jury's subpoena, concluding that the required records doctrine did not apply because the act of producing the required records was testimonial and would compel T.W. to incriminate himself. The Government appeals that order.

## II.  DISCUSSION

The district court found that, beyond dispute, T.W.'s compliance with the subpoena, that is, the act of producing the requested records, is incriminating. The dispute in this case, instead, concerns whether, under those circumstances, the Required Records Doctrine is still applicable—T.W. contends that it is not, and the district court agreed. He also argues, alternatively, that even if it were applicable, the contents of the requested records do not satisfy the criteria of the Required Records Doctrine.

Because this case concerns the combined effect of the Required Records Doctrine and the act of production privilege, a discussion of both is warranted.

The Required Records Doctrine's origin can be traced to *Shapiro v. United States*, 335 U.S. 1 (1948). In *Shapiro*, a fruit wholesaler invoked his Fifth Amendment privilege in response to an administrative subpoena that sought various business records. *Id*. at 4-11. The records in question were required to be maintained under the Emergency Price Control Act (EPCA), which was passed immediately following the outbreak of World War II to prevent inflation and price gouging. *See id.*

The Supreme Court determined that the EPCA represented a valid exercise of Congress' regulatory authority and that the record-keeping provisions of the EPCA were essential to the administration of the statute's objectives. *Id*. at 32. The Court reasoned that "the privilege which exists as to private papers cannot be maintained in relation to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established." *Id*. at 33 (internal citation omitted).

Critical to its holding, the Court observed that the required records had attained "public aspects," such that they could be considered quasi-public records; it was the quasi-public nature of the records in *Shapiro* that allowed their compulsory production. *See id.*

The Court revisited its decision in *Shapiro* twenty years later in *Marchetti* and *Grosso v. United States*, 390 U.S. 62 (1968). In holding that the Required Records Doctrine was inapplicable to the circumstances before it

in both those cases, the Court articulated three require-ments—derived from *Shapiro*'s holding—for determining the applicability of the Required Records Doctrine. As summarized in *Grosso*, those three requirements are: (1) the purposes of the government inquiry must be *essentially regulatory*; (2) information is to be obtained by requiring the preservation of records of a kind which the regulated party has *customarily kept*; and (3) the records themselves must have assumed *public aspects* which render them at least analogous to a public docu-ment. *Grosso*, 390 U.S. at 67-68 (emphasis added). When the requirements of the Required Records Doctrine are met, a witness cannot resist a subpoena by invoking the Fifth Amendment privilege against compelled, testi-monial self-incrimination.

The criteria for the Required Records Doctrine aside, T.W. argues that the doctrine is not applicable to a case such as his where the act of producing the requested documents is compelled, testimonial, and self-incrim-inating. That the *act* of producing documents may be testimonial and incriminating is not a phenomenon unique to this case. The act of production privilege recog-nizes that, while the contents of the documents may not be privileged, the act of producing them may be. *See*, *e.g., Fisher v. United States*, 425 U.S. 391 (1976); *United States v. Doe* (*Doe I*), 465 U.S. 605 (1984); *Braswell v. United States*, 487 U.S. 99 (1988); *Doe v. United States* (*Doe II*), 487 U.S. 201 (1988). In other words, producing incriminating documents under government com-pulsion may have testimonial aspects—aside from the contents of the documents—that are protected under

the Fifth Amendment. For example, compliance with the subpoena tacitly concedes the existence (or non-existence) of the records demanded and their possession or control by the witness. *See Fischer*, 425 U.S. at 410. The Government does not dispute this, but argues the Required Records Doctrine applies nonetheless, and overrides any act of production privilege that T.W. has.

The Government's position finds support in several cases where the Required Records Doctrine—or its rationale—was applied to negate a witness's act of production privilege. *See, e.g., Baltimore City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549 (1990); *Smith v. Richert*, 35 F.3d 300 (7th Cir. 1994); *United States v. Lehman*, 887 F.2d 1328 (7th Cir. 1989); *United States v. Porter*, 711 F.2d 1397 (7th Cir. 1983); *In re Grand Jury Subpoena*, 21 F.3d 226 (8th Cir. 1994); *In re Grand Jury Subpoena Duces Tecum Served Upon Underhill*, 781 F.2d 64 (6th Cir. 1986).

T.W. makes several arguments to get out from underneath these cases. He first argues that, under *Shapiro*, the Required Records Doctrine is not a stand-alone exception to the privilege against self-incrimination; rather, he argues, it is a threshold inquiry to determine whether there is a privilege in the first place—i.e., whether the witness is being compelled to incriminate himself through some form of testimony. We disagree with that characterization of the Required Records Doctrine.

We note that it makes little difference, practically speaking, whether the Require Records Doctrine is an outright exception to the Fifth Amendment privilege—and

by exception we mean that it overrides or supersedes the privilege—or whether it is a threshold inquiry to determine whether the privilege attaches in the first place; under the former, the privilege exists but is superseded and, under the latter, the privilege cannot attach because one or more of its requirements (usually the testimonial aspect) are missing by virtue of the records satisfying the three requirements laid out in *Grosso*; either way, the outcome is the same: the witness is denied the use of the privilege and must produce the potentially incriminating documents. Still, we think the Required Records Doctrine is better regarded as an exception rather than a threshold test to determine whether there is a privilege.

Building on his argument above, T.W. twists *Shapiro* even further by asserting that the Required Records Doctrine, as a mechanism to determine if there is a privilege, is only relevant when challenging the constitutionality of a record-keeping requirement on its face. It is true that *Shapiro* started out primarily as a statutory interpretation case and that it did decide whether a record-keeping and reporting requirement was facially unconstitutional. To that effect, the *Shapiro* Court stated, "It may be assumed at the outset that there are limits which the Government cannot constitutionally exceed in requiring the keeping of records which may be inspected by an administrative agency and may be used in prosecuting statutory violations committed by the record-keeper himself." *Shapiro*, 335 U.S. at 32. But *Shapiro* did more than set the constitutional parameters for record-keeping requirements;

it determined that the Fifth Amendment is not a barrier to the enforcement of a valid civil regulatory scheme.

Since *Shapiro,* several courts, including this one, have applied the Required Records Doctrine broadly and in situations where the act of production privilege has been invoked. *See, e.g.*, *Baltimore City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549 (1990); *Smith v. Richert*, 35 F.3d 300 (7th Cir. 1994); *United States v. Lehman*, 887 F.2d 1328 (7th Cir. 1989); *United States v. Porter*, 711 F.2d 1397 (7th Cir. 1983); *In re Grand Jury Subpoena*, 21 F.3d 226 (8th Cir, 1994); *In re Grand Jury Subpoena Duces Tecum Served Upon Underhill*, 781 F.2d 64 (6th Cir. 1986).

To get around these cases, T.W. argues that in each of them one or more of the requirements of the Fifth Amendment privilege (testimonial, incriminating, and compelled) were missing. *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 189, (2004) ("To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled."). Again, T.W. is wrong. In each of those cases, a valid Fifth Amendment privilege existed, or was assumed, and any such assumption naturally presupposes that all the requirement of the privilege have been met.

That is perhaps best illustrated in *Bouknight*, which was not a required records case, but nonetheless, applied its underlying principles. In *Bouknight*, the Court held that the Fifth Amendment did not shield a mother from complying with a juvenile court order directing her to produce her infant son. 493 U.S. at 555.

In coming to that conclusion, the Court assumed that an act of production privilege existed: "Even assuming that this limited testimonial assertion is sufficiently incriminating and sufficiently testimonial for purposes of the privilege . . . Bouknight may not invoke the privilege to resist the production order because . . . production is required as part of a noncriminal regulatory regime." *Id*. at 555. (internal quotation omitted).

In *United States v. Lehman*, the petitioner—like T.W.—argued that by "producing the records he would be testifying as to their existence and to his control over them in a way that is protected by his Fifth Amendment privilege against self-incrimination." 887 F.2d 1328, 1332 (7th Cir. 1989). We rejected that argument and accepted the Sixth Circuit's reasoning that the required records exception must apply to the act of production. *Id*. at 1332 (citing *In re Grand Jury Subpoena Duces Tecum* (*Underhill*), 781 F.2d 64 (6th Cir. 1986)). To get around our holding in *Lehman*, T.W. argues that, in that case, the witness's act of production was neither testimonial nor incriminating. But even assuming that were true, it proves nothing; in *Lehman*, we said that *Fischer* and its progeny "might be applicable . . . *were it not for the required records exception*." *Id*. (emphasis added). Thus in *Lehman* we held that, to whatever extent the petitioner might have had an act of production privilege under *Doe* and *Fischer*, the Required Records Doctrine superseded it. *See id.*

In *Smith v. Richert*, 35 F.3d 300 (7th Cir. 1994), we provided a thumbnail sketch of the evolution of the

Required Records Doctrine, and in doing so, recapitulated *Lehman*'s holding. There, we said that if the documents being sought were required records, "the person could not resist the subpoena" on the ground that producing the records was testimonial and incriminating, "for the only acknowledgment conveyed by compliance would be of the existence and applicability of the regulatory program that required him to maintain the records." *Id*. at 302. (citation omitted). The district court incorrectly interpreted this to mean that the Required Records Doctrine is not applicable when the "compelled production of the subpoenaed records causes [an individual] to admit any incriminating fact beyond the mere existence and applicability of the regulatory program." But we never held that a witness's acknowledgment of the existence and application of a regulatory scheme could not be incriminating. In fact, we said that is precisely the context in which the Required Records Doctrine is particularly useful:

> The only time the government needed the required records doctrine anymore was when the act of production was itself testimonial, that is, when it communicated knowledge possessed by the person making the production and was, therefore—but for the doctrine—protected by the Fifth Amendment from being compelled by the government.

*Id*.; *see also Commodity Futures Trading Com'm v. Collins*, 997 F.2d 1230, 1232 (7th Cir. 1993) (noting that the "doctrine only comes into play if, were it not for the doctrine, the government would be forcing a person to incriminate himself").

One of the rationales, if not the main rationale, behind the Required Records Doctrine is that the government or a regulatory agency should have the means, over an assertion of the Fifth Amendment Privilege, to inspect the records it requires an individual to keep as a condition of voluntarily participating in that regulated activity. *Smith,* 35 F.3d at 303; *Commodity Futures*, 997 F.2d at 1232. That goal would be easily frustrated if the Required Records Doctrine were inapplicable whenever the act of production privilege was invoked.

The voluntary choice to engage in an activity that imposes record-keeping requirements under a valid civil regulatory scheme carries consequences, perhaps the most significant of which, is the possibility that those records might have to be turned over upon demand, notwithstanding any Fifth Amendment privilege. That is true whether the privilege arises by virtue of the contents of the documents or the by act of producing them. The district court erred to the extent that it held that the Required Records Doctrine was not applicable because T.W.'s compelled production was incriminating and thus protected under the Fifth Amendment.

Having determined that T.W.'s act of production privilege is not an obstacle to the Required Records Doctrine, we must decide whether the records sought under the subpoena fall within the Required Records Doctrine. In order for the Required Records Doctrine to apply, three requirements must be met: (1) the purposes of the United States inquiry must be *essentially regulatory*; (2) information is to be obtained by requiring the preserva-

tion of records of a kind which the regulated party has *customarily kept*; and (3) the records themselves must have assumed *public aspects* which render them at least analogous to public document. *Grosso*, 390 U.S. at 67-68 (emphasis added).

Recently, in a case nearly identical to this one, the Ninth Circuit held that records required under the Bank Secrecy Act fell within the Required Record Doctrine. *In re M.H.*, 648 F.3d 1067 (9th Cir. 2011) *cert. denied*, No. 11-1026, 2012 WL 553924 (U.S. June 25, 2012). In the Ninth Circuit's case, the court held that the witness could not resist a subpoena—identical to the one in this case—on Fifth Amendment grounds because the records demanded met the three requirements of the Required Records Doctrine. *Id*. We need not repeat the Ninth Circuit's thorough analysis, determining that records under the Bank Secrecy Act fall within the exception. It is enough that we find—and we do— that all three requirements of the Required Records Doctrine are met in this case.

Because the Required Records Doctrine is applicable, and the records sought in the subpoena fall within the doctrine, T.W. must comply with the subpoena.

### III. CONCLUSION

For the reasons stated above, we REVERSE the district court's order granting appellee T.W.'s motion to quash the grand jury subpoena.