# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 21, 2012

Lyle W. Cayce
Clerk

No. 11-20750

IN RE: GRAND JURY SUBPOENA

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

DENNIS, Circuit Judge:

This appeal arises from a grand-jury investigation in which the target of the investigation (the "witness") was subpoenaed to produce any records of foreign bank accounts he was required to keep under Treasury Department regulations governing offshore banking. The witness informed the government that he would not comply with the subpoena, citing his Fifth Amendment privilege against self-incrimination, and the government moved to compel the witness to comply. After hearing argument, the district court denied the government's motion, and the government subsequently appealed.

This appeal requires us to address the Required Records Doctrine, under which the government may require that certain records be kept and later

produced without implicating the privilege against self-incrimination. Two of our sister circuits have held that the doctrine applies to subpoenas identical to the one at issue and that, therefore, the subpoenas' targets must comply with them. See In re M.H., 648 F.3d 1067, 1079 (9th Cir. 2011); In re Special Feb. 2011-1 Grand Jury Subpoena Dated Sept. 12, 2011, No. 11-3799, 2012 WL 3644842, at *5-6 (7th Cir. Aug. 27, 2012). Because we conclude that the Required Records Doctrine applies in this case, we decline the witness's invitation to create a circuit split and accordingly REVERSE the district court's denial of the government's motion to compel the witness to comply with the subpoena.

BACKGROUND

I.

The witness in this case is the target of a grand-jury investigation in the Southern District of Texas seeking to determine whether he used secret Swiss bank accounts to evade his federal income taxes. In February 2009, following an investigation into its cross-border banking business, the Swiss investment bank UBS AG ("UBS") entered into a deferred-prosecution agreement with the Justice Department under which UBS (1) admitted to conspiring to defraud the U.S. government by helping U.S. taxpayers commit tax evasion and (2) provided the account records of approximately 250 of these taxpayers, including the witness.

Based on the records obtained from UBS, the government determined that the witness, through an offshore nominee entity, established an account with UBS in 2005. A grand-jury investigation subsequently uncovered other offshore entities the witness controlled. On February 25, 2011, the grand jury issued a subpoena to the witness for any foreign-account records he was required to keep under Treasury Department regulations governing offshore banking. See 31

U.S.C. § 5314; 31 C.F.R. § 1010.420. The subpoena requires the witness to produce, for the years 2005 to 2008,

> [a]ny and all records required to be maintained pursuant to 31 C.F.R. § 103.32 relating to foreign financial accounts that [the witness] had/[has] a financial interest in, or signature authority over, including records reflecting the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with whom such account is maintained, the type of such account, and the maximum value of each such account during each specified year.[1]

The subpoena then states that "[s]uch accounts include, but are not necessarily limited to, the accounts of the following entities" and lists six entities that the witness allegedly controls.

On March 16, 2011, the witness informed the government, through counsel, that he would not comply with the subpoena, citing the Fifth Amendment. The witness argues that requiring him to produce the records sought would compel him to (1) admit the existence of the account, (2) admit his control over it, and (3) authenticate the records. Alternatively, the witness argues, assuming he has a foreign bank account but failed to comply with the record-keeping requirements of the Bank Secrecy Act ("BSA" or "the Act"), compelling him to produce these records would force him to admit to a violation of the Act's record-keeping provisions.

The government moved the district court to compel the witness to comply with the subpoena. The district court heard argument and subsequently denied the government's motion, which the government now appeals.

## II.

---

[1] Since the subpoena was issued, 31 C.F.R. § 103.32 has been transferred to 31 C.F.R. § 1010.420.

The Currency and Foreign Transactions Reporting Act of 1970, Pub. L. 91-508, 84 Stat. 1118 (1970) (codified as amended at 31 U.S.C. §§ 5311-25) (the BSA), regulates offshore banking and contains a number of record-keeping and inspection provisions. Its purpose is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 5311. Section 241(a) of the Act instructs the Treasury Secretary to require U.S. citizens, residents, and institutions to "keep records and file reports" regarding foreign financial transactions and relationships. Id. § 5314. Accordingly, the Treasury Secretary implemented regulations that require (1) U.S. citizens and residents to disclose their foreign bank accounts, see 31 C.F.R. § 1010.350, and (2) that the records for such accounts "be retained by each person having a financial interest in or signature or other authority over any such account" for at least five years and be kept "available for inspection as authorized by law," id. § 1010.420. These record-keeping regulations were in effect at all times relevant to this case.

## DISCUSSION

Because the BSA's record-keeping requirement is "essentially regulatory," the records sought are of a kind "customarily kept" by account holders such as the witness, and the records have assumed "public aspects," we conclude that the Required Records Doctrine applies and requires the witness to comply with the subpoena.

## I.

"We review a district court's decision granting a motion to quash or modify a subpoena for abuse of discretion." In re Grand Jury Proceedings, 115 F.3d 1240, 1243 (5th Cir. 1997). Although this is a deferential standard, the district court abuses its discretion if its ruling is based on an erroneous view of the law. In re MBS Mgmt. Servs., Inc., No. 11-35053, 2012 WL 3125167, at *1 (5th Cir. Aug. 2, 2012).

II.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Supreme Court has held that the privilege against self-incrimination bars the government from "compelling a person to give 'testimony' that incriminates him." Fisher v. United States, 425 U.S. 391, 409 (1976). Because "the privilege protects a person only against being incriminated by his own compelled testimonial communications," the Court determined that it does not shield production of private papers voluntarily prepared or prepared by a third party. Id. at 409-10.

Although one could reason that "[w]here documents are required to be kept and then produced, they are arguably compelled," In re M.H., 648 F.3d at 1071, the Supreme Court has held that the privilege against self-incrimination does not bar the government from imposing record-keeping and inspection requirements as part of a valid regulatory scheme, see Shapiro, 335 U.S. at 32-33. In Shapiro, the Court explained that Congress may impose record-keeping and inspection requirements as a condition of engaging in an activity that is within its power to regulate. Id. at 33. In that case, "the Supreme Court required a wholesaler of fruit and produce to turn over certain records he was obliged to keep and maintain for examination pursuant to the Emergency Price Control Act, which applied in part to records 'customarily kept.'" In re M.H., 648 F.3d at 1072. The Supreme Court explained that this Required Records Doctrine "applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established." Shapiro, 335 U.S. at 17.

That being said, the Required Records Doctrine does not empower the government to command every citizen to keep a diary of their crimes under the

guise of regulation. See id. at 71 (Jackson, J., dissenting). Rather, any record-keeping or inspection requirement under Shapiro must be directed at "an essentially non-criminal and regulatory area of inquiry," Marchetti v. United States, 390 U.S. 39, 57 (1968) (internal quotation marks omitted), and may not be "directed almost exclusively to individuals inherently suspect of criminal activities," Grosso v. United States, 390 U.S. 62, 68 (1968) (holding that the Required Records Doctrine does not permit the government to require record keeping of "wagering activities" as part of a "wagering excise tax" when gambling was generally illegal). Thus, the government may not make an end run on the Fifth Amendment and require criminals to self-report their offenses.

However, "[t]he hypothetical case in which every individual is required to maintain a record of everything he does that interests the government is remote from the case of the individual who enters upon a regulated activity knowing that the maintenance of extensive records available for inspection by the regulatory agency is one of the conditions of engaging in the activity." Smith v. Richert, 35 F.3d 300, 303 (7th Cir. 1994). Thus, the Required Records Doctrine permits "the government . . . [to] have the means, over an assertion of the Fifth Amendment [privilege against self-incrimination], to inspect the records it requires an individual to keep as a condition of voluntarily participating in [a] regulated activity." In re Special Grand Jury Subpoena, 2012 WL 3644842, at *5.

### III.

In Grosso, the Supreme Court identified three "premises" of the Required Records Doctrine: "[F]irst, the purposes of the United States' inquiry must be essentially regulatory; second, information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept; and third, the records themselves must have assumed 'public aspects' which render them at least analogous to public documents." 390 U.S. at 67-68. These

three premises—(1) "essentially regulatory"; (2) "customarily kept"; and (3) "public aspects"—have been recognized by half of the twelve courts of appeals (excluding the Federal Circuit).[2] Although the Fifth Circuit has applied the first and third prongs of the Required Records Doctrine, see, e.g., In re Grand Jury Proceedings, 601 F.2d 162, 167-71 (5th Cir. 1979), it has not applied the second prong, and so the government argues that the customarily kept prong is not required for the Required Records Doctrine to apply. However, "[e]ven if we assume, for purposes of decision, that all three prongs of the test set forth in Grosso apply, we conclude that all three requirements are met in this case." In re M.H., 648 F.3d at 1073.

A.

The witness argues that the text of the BSA and its legislative history indicate that the record-keeping requirements imposed on foreign bank accounts are meant to aid law enforcement and that therefore the Act is not "essentially regulatory." Implicit in the witness's argument is that because the BSA lists first among its purposes the gathering of information that has a "high degree of usefulness in criminal . . . investigations," 31 U.S.C. § 5311, the Act's chief purpose is to fight crime.

Notwithstanding his own argument, the witness acknowledges that the BSA has more than one purpose. And that a statute relates to criminal law in addition to regulatory matters does not strip the statute of its status as "essentially regulatory." See Cal. Bankers Ass'n v. Shultz, 416 U.S. 21, 76 (1974) ("[T]hat a legislative enactment manifests a concern for the enforcement of the criminal law does not cast any generalized pall of constitutional suspicion over it."); In re M.H., 648 F.3d at 1074 ("[T]hat Congress aimed to use the BSA as a

---

[2] See In re M.H., 648 F.3d at 1072; In re Grand Jury Subpoena, 21 F.3d 226, 228 (8th Cir. 1994); United States v. Lehman, 887 F.2d 1328, 1333 (7th Cir. 1989); In re Grand Jury Subpoena Duces Tecum Served upon Underhill, 781 F.2d 64, 67 (6th Cir. 1986); In re Doe, 711 F.2d 1187, 1191 (2d Cir. 1983); United States v. Webb, 398 F.2d 553, 556 (4th Cir. 1968).

tool to combat certain criminal activity is insufficient to render the BSA essentially criminal as opposed to essentially regulatory.").

Furthermore, although one purpose of the BSA was to help ferret out criminal activity, the Act requires records to be kept "where they have a high degree of usefulness in criminal, tax, or regulatory investigations." 31 U.S.C. § 5311 (emphasis added). Elaborating on the non-criminal purposes of the BSA, the House Report acknowledges that the Acts's record-keeping and reporting requirements "aid duly constituted authorities in lawful investigations" but also underscores that the requirements "facilitate the supervision of financial institutions properly subject to federal supervision" and "provide for the collection of statistics necessary for the formulation of monetary and economic policy." H.R. Rep. 91-975 (1970), reprinted in 1970 U.S.C.C.A.N. 4394, 4405. Consequently, the Treasury Department shares the information it collects pursuant to the Act's requirements with other agencies—including the Office of the Comptroller of the Currency, the Consumer Financial Protection Bureau, the Federal Reserve Board, the Federal Deposit Insurance Corporation, the National Credit Union Administration, and the Office of Thrift Supervision—none of which are empowered to bring criminal prosecutions. See 31 U.S.C. § 5319; 31 C.F.R. § 1010.950(a)-(b). Furthermore, the Supreme Court has noted, in discussing "the recordkeeping and reporting requirements of the [BSA]," that Congress "seems to have been equally concerned with civil liability which might go undetected by reason of the transactions of the type required to be recorded or reported." Shultz, 416 U.S. at 76.

The district court's application of the "essentially regulatory" requirement was therefore erroneous. The district court ruled that the BSA's record-keeping requirements fail under Marchetti and Grosso because the "regulatory justifications" for the requirement "are but smoke and mirrors for [the government's] real concern: crime." However, even ignoring the non-criminal

purposes of the BSA, the question is not whether Congress was subjectively concerned about crime when enacting the Act's record-keeping provisions, but rather whether these requirements apply exclusively or almost exclusively to people engaged in criminal activity. See Marchetti, 390 U.S. at 57.

Here, the BSA's record-keeping requirements do not apply exclusively to those engaged in criminal activity. "There is nothing inherently illegal about having or being [the] beneficiary of an offshore foreign banking account," and "[n]othing about having a foreign bank account on its own suggests a person is engaged in illegal activity," In re M.H., 648 F.3d at 1074, points that the witness does not dispute. Because the BSA's record-keeping requirements serve purposes unrelated to criminal law enforcement and because the provisions do not exclusively target people engaged in criminal activity, we conclude that the requirements are "essentially regulatory," satisfying the Require Records Doctrine's first prong.

## B.

That the records sought are of a kind customarily kept is not contested. Even if this were not the case, this prong of the Required Records Doctrine is easily satisfied here. The records sought are of the same type that the witness must report annually to the IRS pursuant to the IRS's regulation of offshore banking: the name, number, and type of account(s), the name and address of the bank where an account is held, and the maximum value of the account during the reporting period. See In re M.H., 648 F.3d at 1076; 31 C.F.R. §§ 1010.350, 1010.420. Furthermore, the records sought are also of the same type that a reasonable account holder would keep in order to access his account. See In re M.H., 648 F.3d at 1076. Accordingly, we find that the records the subpoena seeks are of a kind "customarily kept" by the witness in satisfaction of the Require Records Doctrine's second prong.

## C.

Finally, we consider the witness's arguments that the third prong of the Required Records Doctrine is not met. In order to satisfy this prong, "the records [sought] must have assumed 'public aspects' which render them at least analogous to public documents." Grosso, 390 U.S. at 68. Two courts of appeals have held that "if the government's purpose in imposing the regulatory scheme is essentially regulatory, then it necessarily has some 'public aspects,'" sufficient for the Required Records Doctrine's third prong. In re M.H., 648 F.3d at 1076 (citing Shapiro, 335 U.S. at 33-34); accord Donovan v. Mehlenbacher, 652 F.2d 228, 231 (2d Cir. 1981).

Drawing a distinction between individuals who publicly engage in business and those who privately open a foreign bank account, the witness argues that "[i]ndividuals subject to the BSA's foreign account record keeping requirements are not licensed, are subject to no substantive restrictions, and generally have not engaged in activities with the public or in the public sphere." Br. for Appellee 22. Thus, the witness contends that substantive restrictions, like those imposed in Shapiro, were enacted in order to protect the public and that record-keeping requirements are meant to aid in the enforcement of these substantive restrictions. Accordingly, the "public aspects" necessary for the third prong do not come from record-keeping requirements, the witness argues, but rather from the underlying substantive restrictions enacted to protect the public. Because the BSA imposes no substantive restrictions on the holding of foreign bank accounts, the witness maintains that records of these accounts lack the "public aspects" required for the third prong of the Required Records Doctrine.

The witness misapprehends this prong of the Required Records Doctrine. Although the witness argues that substantive regulations designed to protect the public from harm may imbue otherwise private documents with public aspects, it does not follow that public aspects exist only under these circumstances. Furthermore, adopting a rule that the legitimacy of a record-keeping

10

requirement depends on Congress first enacting substantive restrictions would lead to absurd results. "If the witness's argument were correct, then Congress would be prohibited from imposing the least regulatory burden necessary; it would instead be required to supplement a reporting or recordkeeping scheme with additional and unnecessary 'substantive restrictions' for the sole purpose of upholding its record keeping and reporting requirements." Reply Br. for Appellant 25. Additionally, that the records sought are typically considered private does not bar them from possessing the requisite public aspects. See In re M.H., 648 F.3d at 1077 ("[T]hat the information sought is traditionally private and personal as opposed to business-related does not automatically implicate the Fifth Amendment."); In re Kenny, 715 F.2d at 52-54 (reasoning that subpoenaed medical records possessed sufficient "public aspects" to satisfy the Required Records Doctrine's third prong).

Here, the Treasury Department shares the information it collects pursuant to the Act's record-keeping and reporting requirements with a number of other agencies. That this data sharing is designed to serve an important public purpose sufficient to imbue otherwise private foreign bank account records with "public aspects" is not difficult to imagine. The witness "has not made a compelling argument that the information he is being asked to provide lacks 'public aspects' despite its essentially regulatory nature." In re M.H., 648 F.3d at 1079. Accordingly, we find that the records sought have "public aspects" sufficient to satisfy the Required Records Doctrine's third prong.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's denial of the government's motion to compel the witness to comply with the subpoena.